Donald Eugene YOUNG, et
al., Plaintiffs,

v.

CUTTER BIOLOGICAL, A DIVISION
OF SCRIPT MILES LABORATORIES,
et al., Defendants.

No. CIV 86–1318 PHX RCB (MM).

United States District Court,
D. Arizona.

Aug. 3, 1988.

Michael E. St. George, St. George & Reed, Tempe, Ariz., for plaintiffs.

Thomas P. Prose, Asst. Atty. Gen., Phoenix, Ariz., for State defendants.

William R. Hayden, Tibor Nagy, Jr., Snell & Wilmer, Phoenix, Ariz., for defendants Cutter, Gray and Estenson.

## MEMORANDUM AND ORDER

BROOMFIELD, District Judge.

On July 11, 1988, the court heard oral argument on a series of dispositive motions filed by the parties. Pursuant to the order of the court, these motions are deemed directed at all plaintiffs now consolidated in the present lawsuit.[1] After a careful review of the parties' papers, and after conducting oral argument on the pending motions, the court now rules.

## FACTS

Plaintiffs are inmates at the Arizona State Prison at Florence, Arizona. During their terms of incarceration, plaintiffs worked in various capacities at a "Plasma Center" located at the institution and operated by defendant Cutter Biological, a division of Scripps Miles Laboratories ("Cutter"), pursuant to a contract between defendant Cutter and defendant Ricketts, former director of the Arizona Department of Corrections. ("DOC"). In their First Amended Complaint filed June 28, 1988, plaintiffs seek to recover minimum wages for labor performed in this program. Specifically, plaintiffs allege claims for relief under: (1) 42 U.S.C. § 1983;[2] (2) the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (1982); and (3) A.R.S. § 31–254 (West Supp. 1987) and A.R.S. § 23–355 (West Supp. 1987). These three causes of action are directed at all named defendants, who for the purposes of this memorandum and order will be referred to as the "state defendants" (Ricketts, Lewis, Goldsmith, and DOC), and the "Cutter defendants" (Gray, Estenson, and Cutter).

Plaintiffs seek summary judgment solely against the Cutter defendants on all claims in their First Amended Complaint. The Cutter defendants filed a cross-motion for summary judgment against plaintiffs. Additionally, the state defendants filed various motions to dismiss directed at different plaintiffs, which are to be treated as a single motion for summary judgment against all plaintiffs in this consolidated action.

The underlying facts in this procedurally tangled litigation are generally not in dispute. The Plasma Center operated at the Florence facility for approximately twenty-one years.[3] During that time the DOC entered into several succeeding contracts with Cutter. Specifically, under the governing contracts, it was the responsibility of the DOC to "assign prisoners to [Cutter] as assistants to the staff," and that "approval of all inmate workers will be at the discretion of the [DOC]." In essence then, the Plasma Center employed a number of persons from outside the prison to operate the facility and prisoners were assigned by the DOC to assist those personnel who were employed by the Plasma Center. Un-

---

1. Plaintiffs in this consolidated action now include the following parties: Young/Metcalf (CIV 87–1318 PHX RCB); Scott (CIV 87–845 PHX RCB); Ashelman (CIV 87–810 PHX RCB); Try (CIV 87–1119 PHX RCB); Boylan (CIV 87–2011 PHX RCB); Cardenas (CIV 88–1158 PHX RCB); Tucker (CIV 88–316 PHX RCB); Griffin (CIV 88–638 PHX RCB); and Joy (CIV 88–730 PHX RCB). All of the above plaintiffs are represented by the same counsel. And although the earlier motions, statements of facts, and accompanying affidavits were authored by or directed at only certain plaintiffs, consistent with its previous orders the court applies these papers to all parties' present motions.

2. Plaintiffs base their § 1983 cause of action on the decision in *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir.1985) (en banc). The *Piatt* court held that if a prisoner meets the requirements of an Arizona statute mandating wages for prisoners who perform work for private parties under contract with the Department of Corrections, then the state cannot deprive the inmate of this "liberty" interest without due process of law. *Id.* (citing *Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970)). Obviously then, the viability of any claim under § 1983 is dependent upon a finding that plaintiffs were entitled to minimum wage under the federal or Arizona statutes. For this reason, the court's analysis of plaintiff's § 1983 claim follows the resolution of plaintiffs' federal and state statutory claims.

3. The parties inform the court that the Plasma Center at Florence is no longer in operation.

der the terms of the governing agreement, the Plasma Center was required to pay the DOC twelve dollars per week for each prisoner who worked at the center. It is uncontested that all prisoner compensation for services performed at the center was paid directly to the Inmates Account Office, a subdivision of the DOC. Furthermore, pursuant to Arizona law, the DOC retained control over the disposition of any compensation paid by the Cutter defendants to the Inmates Accounts Office. Plaintiffs also agree that there were no oral or written agreements between the Plasma Center and any prisoner regarding compensation or conditions of employment. Finally, defendants acknowledge that the routine, day-to-day supervision of the inmate assistants at the center was conducted by the Cutter defendants, and that some inmate work assignments and removals were made at the request or suggestion of these defendants.

However, the parties do contest where the ultimate control and regulation of the inmate/workers were vested. Both the state defendants and the Cutter defendants argue that this control was vested with the DOC. Specifically, they contend that all prisoners assigned to the Plasma Center remained under the direct authority of the DOC and could have been assigned to or removed from the center at the discretion of the DOC. Both groups of defendants also contend that the DOC maintained absolute control in screening prisoners proposed as plasma center workers and that the Cutter defendants did not maintain any employment records for any of the inmates assigned to the facility. To support their statement of facts, the Cutter defendants submit the affidavits of former Plasma Center managers Estenson and Gray, and a copy of the January 2, 1985 contract agreement between the state defendants and the Cutter defendants. Plaintiffs merely state in their corresponding statement of facts that the above contentions are "denied."

Plaintiffs' own statement of facts in support of their motion for summary judgment merely posits the legal conclusion that plaintiffs were "employees" of the Cutter defendants within the meaning of the appli-cable state and federal statutes. Plaintiffs' sole statement of fact offered in support of their motion is an affidavit from plaintiff Ashelman. In this document, Ashelman alleges that "[o]n April 22, 1985, I was hired and employed by Norman L. Gray, Manager of the Arizona State Plasma Center, Cutter Biological." Plaintiff's Motion for Summary Judgment, Exhibit A, ¶ 7. Ashelman further states that

> in order for plaintiff to work for Cutter Biological, affiant applied for the job and position which is more specifically described hereinbelow, was approved for employment by Cutter Biological by the prison staff of the DOC (via a classification evaluation); throughout his employment by Cutter, affiant did retain his position by satisfactorily performing his assigned duties in the opinion of Cutter Biological and its staff; that Cutter Biological could have requested that the prison remove plaintiff from his employment by administrative request of the DOC; that the DOC could remove at its whim an inmate worker, including plaintiff, from the plasma center and from his position at Cutter by reclassification or other security or disciplinary move or charge; that insofar as it is descriptive of the working conditions, the Affidavit of Darryl Estenson is true and correct insofar as it sets forth the "economic realities" of the overall employment setting for inmates at Cutter Biological and the interplay between the Cutter employees, the prison staff and the inmate employees.

*Id.,* ¶ 12. Finally, Ashelman's sworn statement concludes:

> So long as I was not reclassified by the DOC or committed no disciplinary infraction so as to cause a loss of job or other privilege, I was allowed to continue working by the DOC in the Cutter Biological plasma center. The DOC could remove me from the job at any time and without any reason therefor. I was paid by having Cutter pay the DOC and the DOC would weekly credit to my account the wages earned. The amount of wages

earned was known to the DOC and the Cutter civilian personnel.

*Id.,* ¶ 13.

### (1) FAIR LABOR STANDARDS ACT ANALYSIS

Plaintiffs claim that they are entitled to minimum wages, pursuant to the provisions of the FLSA, for the work they performed as assistants at the Plasma Center. The FLSA requires an "employer to pay minimum wage to an 'employee' under specific circumstances." *See* 29 U.S.C. § 206(a)(1) (1982). The statute defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1) (1982). The term "employ" is defined as including "to suffer to permit work." 29 U.S.C. § 203(g) (1982). An "employer" is one who acts "directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (1982). An entitlement to minimum wage must be predicated upon the existence of an employment relationship. *See* 29 U.S.C. § 206(a)(1) (1982).

Because the above definitions are stated in only the broadest of terms, courts have adopted a case by case analysis to determine whether an individual is entitled to the minimum wage provisions of the FLSA. *See Carter v. Dutchess Community College,* 735 F.2d 8, 12 n. 1 (2d Cir.1984). This does not mean, however, that there are no governing standards to assist the reviewing court. Rather, courts have adopted an "economic realities" test to determine whether an employment relationship exists for the purposes of the FLSA.[4] The most recent formulation of this standard was set forth in *Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir.1983), in which the Court of Appeals stated that a court should inquire into "whether the alleged employer (1) had the power to hire and fire employees, (2) super-

vised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*

It is undisputed that in FLSA cases not involving inmates, the "economic realities" test is the appropriate standard used by courts to determine whether an employer-employee relationship exists under the statute. Defendants also acknowledge that courts have applied this same test in cases involving inmates seeking minimum wages for their labor. In fact, plaintiffs cite four cases in which the reviewing court applied the "economic realities" test to inmates' FLSA actions. *See Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir.1984); *Alexander v. Sara, Inc.,* 559 F.Supp. 42, 44 (M.D.La.1983), *aff'd,* 721 F.2d 149 (5th Cir.1983); *Sims v. Parke Davis & Co.,* 334 F.Supp. 774, 786–88 (E.D. Mich.1971), *aff'd,* 453 F.2d 1259 (6th Cir. 1971) (per curiam), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972); *Hudgins v. Hart,* 323 F.Supp. 898, 899 (E.D.La.1971); *see also Prieur v. D.C.I. Plasma Center of Nevada,* 726 P.2d 1372, 1373 (Nev.1986) (applying economic realities test to prisoners' FLSA claim).

### (a) Plaintiffs' Motion for Summary Judgment and the Cutter Defendants' Cross–Motion for Summary Judgment:

▇ Plaintiffs seek summary judgment on their FLSA claim against the Cutter defendants and these same defendants seek summary judgment against plaintiffs. Applying the "economic realities" standard as enunciated in *Bonnette* to the factual record offered by these parties, it is clear to the court that the Cutter defendants were not "employers" of plaintiffs within the meaning of the statute. Further, the

---

**4.** Although plaintiffs expend considerable time and effort arguing that both the state defendants and the Cutter defendants were "joint employers" of the inmate laborers, this issue is irrelevant to the court's initial analysis. First, plaintiffs concede that no case law supports such a proposition in the inmate laborer context. And even assuming this position was supported by previous decisions, the court must still apply the

"economic realities" test to each individual entity purported to be an "employer." *See* 29 C.F.R. § 791.2(a) (1981) ("all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act"); *see, e.g., Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1469–70 (9th Cir.1983).

court concludes that plaintiffs' raise no genuine issue of material fact regarding the status of the Cutter defendants.

First, apart from the legal conclusions stated by plaintiffs that they were "employees" of the Cutter defendants who were "hired" by these same defendants, there is nothing in the governing contract to support this claim. Indeed, the Ashelman affidavit itself supports the Cutter defendants' position that the power to hire and fire was vested solely with the state defendants. Second, although the Cutter defendants took responsibility for the day-to-day supervision of the inmate workers, under the specific terms of the contract it was the DOC's ultimate responsibility to assign and approve the inmates to the Cutter defendants. Third, the responsibility for the rate and method of pay was vested with the DOC. It is uncontested that under the governing contract, and pursuant to state law, a specific sum per person/per week was paid by the Cutter defendants to the DOC. The DOC then, in turn, transferred another sum to the inmate workers.

Finally, the fourth factor concerning the maintenance of employment records is also decided in the Cutter defendants' favor. The Cutter defendants submitted affidavits of the former managers of the Plasma Center which state that no employment records were kept for the inmate prisoners. This claim is supported by the contract between the state defendants and the Cutter defendants, at least to the extent that the specific language of the agreement does not require the Cutter defendants to do so. Plaintiffs offer no evidence or sworn statement to contradict defendants' position, only a simple denial. As such, they have clearly failed to meet their burden of proof under Fed.R.Civ.P. 56, either as the moving or non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2553, 91 L.Ed.2d 202 (1986).

In sum, the court holds that the economic reality of the relationship between plaintiffs and the Cutter defendants was not one of employer-employee within the meaning of the FLSA. Plaintiffs remained inmates under the complete control of the state defendants. The Cutter defendants did not become the "employers" of plaintiffs simply because the state defendants assigned plaintiffs to assist in the operation of the Plasma Center. Accordingly, the court denies plaintiffs' motion for summary judgment against the Cutter defendants based on their FLSA cause of action, and grants the Cutter defendants' cross-motion for summary judgment on this same claim.

*(b) State Defendants' Motion for Summary Judgment:*

■ The state defendants seek summary judgment against plaintiffs' FLSA cause of action directed against these same defendants. Because the court finds the state defendants' position is well taken, it therefore grants the motion and dismisses plaintiffs' FLSA claim in its entirety.

As to plaintiffs FLSA cause of action directed at the state defendants, the court begins its analysis by noting that plaintiffs do not seek to recover minimum wages from an outside, private employer. Rather they seek to have the court declare that the State of Arizona, the Department of Corrections, and various state officials, are "employers" within the purview of the FLSA. In other words, plaintiffs would have the court hold that the various named defendants are *de facto* "outside" employers. Thus, the sole issue presented by state defendants' motion for summary judgment against plaintiffs' FLSA claim is whether the state, its agencies, or officials could ever be "employers" within the meaning of the federal statute.

The court is not required to conduct an "economic realities" analysis with respect to plaintiffs' claim against the state defendants. The case law relied upon by plaintiffs, and previously cited by the court, merely supports the proposition that an "economic realities" analysis is appropriate to determine whether an *outside, private* firm or corporation is an employer of the inmate. *See, e.g., Carter v. Dutchess Community College*, 735 F.2d at 12 ("We hold only that an inmate may be entitled under the law to receive the federal minimum wage from an outside employer, de-

pending upon how many typical employer prerogatives are exercised over the inmate by the outside employer, and to what extent."); *Alexander v. Sara, Inc.*, 559 F.Supp. at 44 (economic realities test shows that "the inmates who participate in the plasma program do not lose their status as inmates. The inmates remain, as indeed they must, under the Direct Supervision and control of the [non-party] Louisiana Department of Corrections and not [defendant] Sara, Inc."); *Sims v. Parke Davis & Co.*, 334 F.Supp. at 787 ("plaintiffs are not in economic reality employees of defendant drug companies as that word is defined in the Act"); *Hudgins v. Hart*, 323 F.Supp. at 899 ("plaintiff was not an employee of [Hyland Laboratories] for the purposes of the Fair Labor Standards Act"); *see also Prieur v. D.C.I. Plasma Center of Nevada*, 726 P.2d at 1373 (economic reality established that inmates were not "employees" of private contractor). These cases are clearly distinguishable from the instant matter since this specific cause of action is not directed at any outside parties. Instead plaintiffs seek to have the court apply the "economic realities" test to the custodial relationship between correctional institution and inmate. Both case law and logic reject this position.

In fact, the above cited cases support the state defendants' motion for summary judgment. In applying the "economic realities" test to inmate labor situations, the reviewing courts examined whether the outside contractors exercised typical employer prerogatives over the inmate labor pool. *See, e.g., Carter v. Dutchess Community College*, 735 F.2d at 14. If the reviewing court concluded that the private contractor did not retain the traditional employer rights, then it followed that the FLSA was not applicable because inmate labor belongs to the institution and inmate laborers do not lose their primary status as inmates simply because they work. *See Alexander v. Sara, Inc.*, 559 F.Supp. at 44; *Hudgins v. Hart*, 323 F.Supp. at 899; *Prieur v. D.C.I. Plasma Center of Nevada*, 726 P.2d at 1373; *see also McGinnis v. Stevens*, 543 P.2d 1221, 1238 (Alaska 1975) ("[a] prisoner is not an 'employee' of the state under the federal act"). Put another way, an application of the "economic realities" test to the relationship between penal institution and inmate could only lead to the foregone conclusions that: (1) no outside contractor is an "employer" of the inmates; and (2) the state penal system retains complete control over the inmate laborers. Plaintiffs have cited no authority, nor can they, to complete this syllogism to read: and (3) the state penal system is therefore the "employer" of the inmates within the meaning of the FLSA.

The court's analysis is also supported by Arizona's statutory scheme involving inmate labor. Under Arizona law, prisoners are under a legislative mandate to perform "hard labor"—such as outside yard and grounds work, kitchen duties, maintenance crews, and other work details. *See* A.R.S. § 31–251 (West Supp.1987). These hard labor jobs are not performed under private sector contracts. Compensation to the inmate for this form of labor is at the discretion of the director of the Department of Corrections, but in no event may this compensation exceed fifty cents per hour. A.R.S. § 31–254.A (West Supp.1987). The director's wage policy for these jobs is set forth in a published set of guidelines known as the Wage Incentive Pay Program ("WIPP").

Plaintiffs make no claim against the state or its agents for work performed in the prison for the institution. And just as there is no outside, private employer in the "hard labor" situation, so too in their specific claim against the state defendants plaintiffs do not seek federally mandated wage levels from private contractors. To the extent that plaintiffs have no viable claim for FLSA wages from prison officials for their "hard labor," they cannot now seek FLSA wages from these same officials for work performed in conjunction with a prison industries program. For all of the foregoing reasons, the court grants state defendants' motion for summary judgment against plaintiffs' claim for minimum wages under the Fair Labor Standards Act.

## (2) STATE LAW ANALYSIS

Plaintiffs' Third Claim for Relief in their First Amended Complaint alleges that plaintiffs are entitled to minimum wages for their services performed at the Plasma Center under Arizona law. The pertinent Arizona statute provides:

A. Each prisoner who is engaged in productive work in any state prison or institution under the jurisdiction of the department of corrections as a part of the prison industries program shall receive for his work such compensation as the director of the department of corrections shall determine. Such compensation shall be in accordance with a graduated schedule based on quality and quantity of work performed and skill required for its performance, but in no event shall such compensation exceed fifty cents per hour unless the prisoner is employed in an Arizona correctional industries program [ARCOR] pursuant to title 41, chapter 11, article 3 [A.R.S. § 41–1621 *et seq.*]. If the director enters into a contract pursuant to § 41–1624.01 with a private person, firm, corporation or association the compensation shall be as prescribed by the person, firm, corporation or association, but shall not be below minimum wage. Compensation shall not be paid to prisoners for attendance at educational training or treatment programs, but compensation may be paid for work training programs.

A.R.S. § 31–254.A (West Supp.1987). A.R.S. § 41–1624.01 (West Supp.1987), to which the above statute refers, provides in pertinent part:

A. The director shall compensate prisoners for their services pursuant to § 31–254.

B. The director or his designee may contract with any state agency, political subdivision or state department or any private person, firm, corporation or association to provide services or labor rendered by prisoners.

*Id.*

Finally, the pertinent language describing the correctional industries program is found at A.R.S. § 41–1623 (West Supp. 1987), and states in part:

D. The director or his designee, consistent with sound business judgment, may construct, reconstruct or lease one or more buildings or portions of buildings on the grounds of any state correctional institution or location under department control, together with the real estate needed for reasonable access to such buildings, any lease to have a term of not to exceed twenty years to a private corporation for the purpose of establishing and operating a factory for the manufacture and processing of products or any other commercial enterprise deemed by the director to provide employment opportunities for inmates in meaningful jobs for wages. Each lease negotiated and concluded pursuant to this section shall include and shall be valid only so long as the lessee adheres to the following provisions:

1. All persons employed in the factory or other commercial enterprise operated in or on the leased property, except the lessee's supervisory employees and necessary training personnel, shall be inmates of the institution where the leased property is located who are approved for such employment by the director or his designee.

2. The factory or other commercial enterprise operated in or on the leased property shall observe at all times such practices and procedures regarding security as the lease may specify or as the director may temporarily stipulate during periods of emergency.

3. The factory or other commercial enterprise operated on the leased property shall be deemed a private enterprise and subject to all the laws and lawfully adopted rules of this state governing the operation of similar business enterprises everywhere.

E. Except as provided by applicable provisions of the United States Code, inmates or correctional institutions of this state may be employed in the manufacture and processing of products for introduction into interstate commerce, so long

as they are paid no less than the prevailing minimum wage.

*Id.*

Plaintiffs' state law cause of action in their First Amended Complaint is based upon the above Arizona statutory scheme. Specifically, they allege that both the state defendants and the Cutter defendants refuse to pay them minimum wages pursuant to the provisions of A.R.S. § 31–254. They therefore request a judgment against all named defendants as follows:

1) In such amount as may be proved to be due plaintiff when employed within the three years prior to the filing of the original complaint herein for each hour worked pursuant to which plaintiff was not paid the minimum wage pertaining at the time;

2) For treble the wages due under A.R.S. 23–355;

3) For the additional sum of $10,000,000 as and for exemplary and punitive damages;

4) That plaintiff have reasonable attorneys' fees as incurred;

5) That plaintiff have his costs incurred herein; and

6) That plaintiff have such other and further relief as is just and proper in the premises.

Plaintiffs' First Amended Complaint, 10.

*(a) Plaintiffs' Motion for Summary Judgment and the Cutter Defendants' Cross–Motion for Summary Judgment:*

Plaintiffs seek summary judgment on their state law claims against the Cutter defendants and these same private defendants seek summary judgment against plaintiffs. Essentially, the Cutter defendants take the position that any claim made by plaintiffs under the applicable Arizona statutes must be directed against the state defendants and not the private contractor. Not surprisingly, both plaintiffs and the state defendants contend that any claim for wages made by plaintiffs should be directed at the private employer, the Cutter defendants. Because the court concludes that under the Arizona statutory scheme only the state defendants could be found ultimately liable for payment of minimum wages, the court denies plaintiffs' motion for summary judgment and grants the Cutter defendants' cross-motion for summary judgment.

As the previously quoted statutes provide, the director of the DOC "shall" compensate prisoners for their services pursuant to § 31–254. Furthermore, this compensation "shall be paid out of the fund established pursuant to § 41–1624 or out of funds appropriated for such purpose by the legislature when required." A.R.S. § 31–254.C (West Supp.1987). A.R.S. § 41–1624.A. (West Supp.1987) provides that the "director may establish a revolving fund to be used to pay the expenses required ... [f]or the compensation of prisoners...." All monies derived from contract services must be deposited in this revolving fund. *See* A.R.S. § 41–1624.01.C (West Supp.1987). Finally, consistent with the earlier examination of the contract entered into between the state defendants and the Cutter defendants, nothing in the agreement requires the private contractor to pay the inmates. Rather, the Cutter defendants paid the DOC a per person/per week rate for the inmates assistants assigned by the DOC to the Plasma Center.

The state defendants do not dispute the above statutory scheme. They concede that the director may set up such a revolving fund and that this fund is then to be used, in part, for the compensation of inmates. However, the state defendants argue that the court must look to the origin of the money placed into the revolving fund. Thus, the state defendants contend, the DOC is merely a conduit for conveying these funds from the private contractor to the inmate.

Whether the state defendants have a claim for indemnity or contribution is an issue not before the court, nor resolved by this order. Suffice it to say that the state scheme is clear that it is the director of the DOC who "shall" pay inmates. It is equally clear that pursuant to the statutes, the private contractor may *not* directly pay inmates. The only agreement for payment

before the court is the contract between the state defendants and the Cutter defendants. Any rights which plaintiffs may have for wages are found in the applicable state statutes. And it is this statutory scheme which requires the director to compensate inmates; the converse, of course, is that plaintiffs must look to the director for these wages. For the above reasons, the court denies plaintiffs' motion for summary judgment against the Cutter defendants on the state law claims, and grants the Cutter defendants' cross-motion for summary judgment on this same cause of action.

### (b) State Defendants' Motion for Summary Judgment:

The state defendants offer no substantive analysis of plaintiffs' state law claims. Instead, they contend that the court lacks subject matter jurisdiction to hear plaintiffs' state law claims against them. Because the court concurs with defendants' position and holds that it lacks subject matter jurisdiction to hear this portion of plaintiffs' First Amended Complaint, it therefore grants the state defendants' motion for summary judgment against plaintiffs' state law claims.

■ The court begins its analysis by noting that the state of Arizona is a named defendant in this action. However, absent the state's consent to suit,[5] or express congressional abrogation of the state's sovereign immunity,[6] the eleventh amendment bars the court from granting plaintiffs any relief against the state defendant. *See Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam). Furthermore, plaintiffs' state law claim seeks retroactive relief in the form of back-pay allegedly owed plaintiffs. To the extent plaintiffs seek an award from the court for these wages from state agencies and officials, then the eleventh amendment again deprives the court of subject matter jurisdiction. *See Edelman v. Jordan,* 415 U.S. 651, 666–67, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974).

■ Finally, even if they sought only prospective relief, it is clear that plaintiffs would have the court enforce *state* law against state agencies and officials. As such, the court is without subject matter jurisdiction to entertain, let alone award relief for, any portion of plaintiffs' state law claim. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 107, 104 S.Ct. 900, 911–12, 79 L.Ed.2d 67 (1984). The Supreme Court in *Pennhurst* held that federal courts lack subject matter jurisdiction to order state agencies or officials to conform their conduct in compliance with state law because

[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

465 U.S. at 106, 104 S.Ct. at 911.

■ Plaintiffs attempt to avoid the clear holding of *Pennhurst* by arguing that the state agencies and officials who have thus far denied plaintiffs minimum wages acted *ultra vires,* and therefore were outside the scope of the eleventh amendment. Just as the majority in *Pennhurst* rejected this argument, so too does the court in the present matter. The Court in *Pennhurst*

---

**5.** *See generally* Althouse, *How to Build a Separate Sphere: Federal Courts and State Power,* 100 Harv.L.Rev. 1485, 1523 (1987) ("the eleventh amendment counsels hesitation. When the state has created a right running against itself, but has failed to take the additional step of consenting to suit in federal court, the federal court should find that jurisdiction properly belongs to the state courts").

**6.** This holding also bars plaintiffs' § 1983 claim against the state of Arizona. The court did not consider this matter in the preceding discussion of plaintiffs' FLSA claim because Congress expressly abrogated state sovereign immunity when it amended the FLSA to allow suit in state or federal court. *See Bonnette v. California Health & Welfare Agency,* 414 F.Supp. 212 (N.D. Cal.1976).

concluded that the *ultra vires* doctrine can operate to avoid the holding in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 2d 714 (1908), and the eleventh amendment's bar only when (1) it is necessary to vindicate federal rights, and (2) it is clear that an official acts "without any authority whatever." *Pennhurst*, 465 U.S. at 101 n. 11, 114 n. 25, 117, 104 S.Ct. at 908 n. 11, 915 n. 25, 917. Plaintiff's allegations in their Third Claim for Relief meet neither of these requirements, and thus plaintiffs' state law claims against the state defendants fall within the scope of *Ex Parte Young*.

■ The *Pennhurst* holding clearly removes the court's ability to exercise pendent jurisdiction to entertain plaintiffs' state law claims against the state defendants, since this "judge-made doctrine" cannot displace "the explicit limitation on federal jurisdiction contained in the Eleventh Amendment." *Pennhurst*, 465 U.S. at 117–18, 104 S.Ct. at 917. Because the *Pennhurst* holding prohibits the court from deciding plaintiffs' pendent state law claims, the court grants the state defendants' motion for summary judgment against plaintiffs' state law claim for minimum wages and thus dismisses plaintiff's Third Claim for Relief in its entirety.

### (3) SECTION 1983 ANALYSIS

Plaintiffs' First Claim for Relief in their First Amended Complaint is based on 42 U.S.C. § 1983, and the decision in *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985) (en banc). The *Piatt* court held that if a prisoner meets the requirements of an Arizona statute mandating wages for prisoners who perform work for private parties under contract with the Department of Corrections, then the state cannot deprive the inmate of this "liberty" interest without due process of law. *Id.* Thus, the *Piatt* holding requires that a reviewing court determine the validity of the underlying state law claim in the § 1983 action. The holding would also seem to allow such an action to be heard by a court under federal question subject matter jurisdiction, even though such a claim revolves solely around state law claims directed against state officials.

Plaintiffs' § 1983 claim seeks the following relief from the court:

1) That defendants ... be enjoined from not paying past due and future minimum wages and compensation under the Act and state law; that a monetary judgment be ordered against defendants in the amount of the past wages and liquidated damages due, which, when paid will be deemed in expungement of any such injunction for past wages due under the Act;

2) For the additional sum of $10,000,000 as and for exemplary and punitive damages;

3) That plaintiff have reasonable attorneys' fees as incurred;

4) That plaintiff have his costs incurred herein; and

5) That plaintiff have such other and further relief as is just and proper in the premises.

Plaintiffs' First Amended Complaint, 8–9.

#### (a) Plaintiffs' Motion for Summary Judgment and the Cutter Defendants' Cross–Motion for Summary Judgment:

■ Plaintiffs seek summary judgment on this civil rights claim against the Cutter defendants and these same private defendants seek summary judgment against plaintiffs. As the court noted earlier, this § 1983 claim is dependent upon a finding that plaintiffs were entitled to minimum wage under the federal or Arizona statutes. Because the court grants the Cutter defendants' cross-motion for summary judgment on both plaintiffs' federal and state claims, plaintiffs no longer retain a colorable claim under this civil rights statute. Accordingly, plaintiffs' motion for summary judgment against the Cutter defendants as to the § 1983 claim is denied, and the Cutter defendants' cross-motion for summary judgment as to this same claim is granted. Plaintiffs complaint and action against the Cutter defendants is therefore dismissed in its entirety.

*(b) State Defendants' Motion for Summary Judgment:*

Again, plaintiffs' § 1983 claim against the state defendants is dependent upon a finding that plaintiffs were entitled to minimum wage under the federal or Arizona statutes. Because the court grants the state defendants' motion for summary judgment on (1) the federal claim for failure to state a claim upon which relief can be granted, and (2) the state claim for lack of subject matter jurisdiction, it thus seems that plaintiffs no longer retain a colorable claim under this civil rights statute. However, it is logically possible that although the court lacks subject matter jurisdiction to hear the underlying state law claims, under the Court of Appeals' holding in *Piatt*, the court may still retain federal question subject matter jurisdiction to hear plaintiffs' § 1983 suit against the state defendants.

Of course, the practical result of this retention would be to allow the court to consider the substance of the state claims against the state defendants. Before the court may analyze the merits of plaintiffs' § 1983 claim, based on a deprivation of their alleged state statutory rights, the court must first decide if it has subject matter jurisdiction to entertain plaintiffs' remaining cause of action. Indeed, defendants sole argument in support of their motion to dismiss this claim appears to be that the court lacks subject matter jurisdiction as to this § 1983 cause of action.[7] Even were this issue not raised by defendants, however, the court would be compelled to resolve any doubts as to its jurisdiction to hear a claim.

Essentially, the court must decide whether retaining subject matter jurisdiction over this remaining claim against the state defendants is consistent with the decisions of the Supreme Court in *Alabama v. Pugh,* *Edelman,* and *Pennhurst,* and the Ninth Circuit's subsequent holding in *Piatt.*

First, plaintiffs' claim against the State of Arizona as a named defendant remains barred by the eleventh amendment since Congress has not abrogated a state's sovereign immunity from suit under § 1983. *See Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam). Additionally, plaintiffs' § 1983 claim seeks retroactive relief in the form of back-pay allegedly owed plaintiffs. To the extent plaintiffs seek an award from the court for these wages from state agencies and officials, then the eleventh amendment again deprives the court of subject matter jurisdiction. Under the Court's holding in *Edelman,* in an action under § 1983, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not include a retroactive award which requires the payment of funds from the state treasury." 415 U.S. at 666–67, 94 S.Ct. at 1362. This eleventh amendment bar against retroactive relief remains in effect even though plaintiffs' claim arises under the federal Constitution. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

This distinction between prospective and retroactive relief is not the controlling factor in deciding whether the eleventh amendment, under the Court's holding in *Pennhurst,* bars this court from enforcing compliance with *state* law. *See Pennhurst,* 465 U.S. at 106, 104 S.Ct. at 911; *see also* Amar, *Of Sovereignty and Federalism,* 96 Yale L.J. 1425, 1480 n. 224 (*"Pennhurst's* analysis invites us to reorient the Eleventh Amendment's axis from the prospective-retrospective line of *Edelman* to the state law-federal law distinction involved in both *Pennhurst* and *Chisholm* ").

---

7. The state defendants' original motion to dismiss, treated as a motion for summary judgment, was filed before the court granted plaintiffs' leave to file their First Amended Complaint to specifically plead a § 1983 cause of action as a separate claim for relief. The original motion did not directly address whether the court retains subject matter jurisdiction to hear plaintiffs' § 1983 claim encompassing their alleged state statutory rights. The state defendants did not submit a reply brief relating to any aspect of their motion. However, at oral argument, in response to questioning from the court, the state defendants argued that the *Piatt* court was not presented with the specific jurisdictional question presently before the court.

In fact, the *Pennhurst* court identified at least three intrusive aspects in the lower court's order: (1) bringing a sovereign state into federal court without its consent; (2) imposing a substantial and ongoing financial burden on the state; and (3) ordering state officials to conform their conduct to state law, relief which does not vindicate federal law. *Pennhurst*, 465 U.S. at 99–100, 104, 105, 104 S.Ct. at 907, 910, 911. Hence, all that remains for the court to decide is whether it has subject matter jurisdiction to award prospective, injunctive relief[8] to plaintiffs under their § 1983 cause of action. Simply stated, the issue is whether the *Piatt* decision is consistent with the holding in *Pennhurst*.

Although the state defendants suggest that the question of subject matter jurisdiction was never raised before the Court of Appeals in *Piatt*, the court notes that this case was decided approximately one year after the Supreme Court's decision in *Pennhurst*. However, as previously discussed by the court, the *Edelman* doctrine denying a court in a § 1983 claim subject matter jurisdiction to grant retroactive relief would have presumably limited remedies available to the trial court on remand in the *Piatt* case.

Furthermore, the court concludes that even if the eleventh amendment bar was raised in *Piatt*, the Court of Appeals' ruling would not have been affected by *Pennhurst*. The *Pennhurst* majority attempted to balance two conflicting doctrines: (1) a federal court's pendent jurisdiction over state law claims; and (2) the eleventh amendment's prohibition against states being sued in federal court. As pointed out earlier, the majority in *Pennhurst* concluded that the common law principle of pendent jurisdiction could not override an explicit constitutional provision to the con-

trary. Because plaintiffs' remaining § 1983 claim is before the court under *federal question* subject matter jurisdiction, this grant of jurisdiction distinguishes the present case and *Piatt*, from the facts in *Pennhurst*.

Additionally, assuming plaintiffs were to prevail on the merits of their remaining § 1983 claim concerning denial of their alleged state statutory rights, an award from this court of prospective-injunctive or declaratory relief would be consistent with *Pennhurst* since the relief granted: (1) would not place a financial burden on the state pursuant to the doctrine of *Ex Parte Young* and the Court's holding in *Edleman;* and (2) would vindicate federal rights in that plaintiffs' seek, pursuant to the holding in *Piatt*, due process of law for their alleged "liberty interest" in minimum wages as mandated by Arizona statute. Although it appears to the court that plaintiffs have in essence "bootstrapped" § 1983 subject matter jurisdiction on to their state law claims, the court cannot conclude that this is inconsistent with the Court of Appeals' holding in *Piatt* and the Supreme Court's holding in *Pennhurst*.[9]

The court therefore concludes that it has subject matter jurisdiction to hear plaintiffs' § 1983 claim against the state defendants based on an alleged deprivation of minimum wages due under the Arizona statutory scheme only in the limited sense that if plaintiffs succeed on this claim the court may grant prospective-injunctive or declaratory relief. Because the state defendants' motion for summary judgment does not address the substance of plaintiffs' underlying state law claims, the court denies their motion for summary judgment against this remaining claim. The court therefore grants in part and denies in part the state defendants' motion for summary

---

**8.** The court assumes for the purposes of the pending motion that plaintiffs' prayer to enjoin defendants from "not paying" minimum wage pursuant to Arizona statutes may be construed as a request for prospective-injunctive or declaratory relief.

**9.** Indeed, at least one plaintiffs' lawyer/commentator in the wake of *Pennhurst* posited this precise method, among others, as a model for

remaining in federal court. *See* English, *The* Pennhurst II *Decision and its Implications for Foster Care Litigation,* 18 Clearinghouse Review 33, 36–37 (1984) (counseling a plaintiff suing state officials on state law grounds to argue that relevant state law creates a "property" interest, the deprivation of which creates a federal claim).

judgment on plaintiffs' First Claim for Relief based on 42 U.S.C. § 1983.

IT IS ORDERED granting in part and denying in part, consistent with the preceding memorandum of the court, defendants State of Arizona, Arizona Department of Corrections, Ricketts, Lewis, and Goldsmith's motion for summary judgment against plaintiffs' First Claim for Relief, based on 42 U.S.C. § 1983, contained in plaintiffs' First Amended Complaint.

IT IS FURTHER ORDERED granting defendants State of Arizona, Arizona Department of Corrections, Ricketts, Lewis, and Goldsmith's motion for summary judgment against plaintiffs' Second Claim for Relief, based on the 29 U.S.C. § 201 *et seq.*, contained in plaintiffs' First Amended Complaint.

IT IS FURTHER ORDERED granting defendant State of Arizona, Arizona Department of Corrections, Ricketts, Lewis, and Goldsmith's motion for summary judgment against plaintiff's Third Claim for Relief, based on A.R.S. §§ 31–254 and 23–355, contained in plaintiffs' First Amended Complaint.

IT IS FURTHER ORDERED denying plaintiffs' motion for summary judgment against defendants Gray, Estenson, and Cutter Laboratories.

IT IS FURTHER ORDERED granting defendants Gray, Estenson, and Cutter Laboratories' cross-motion for summary judgment against plaintiffs' First, Second, and Third Claims for Relief contained in Plaintiff's First Amended Complaint.

IT IS FURTHER ORDERED dismissing plaintiffs' complaint and action against defendants Gray, Estenson, and Cutter Laboratories.

IT IS FINALLY ORDERED vacating the stay of discovery entered by the court at the previous status conference held by the parties.