STATE of Wisconsin,
Plaintiff-Respondent,

v.

Marcus W. JOHNSON,
Defendant-Appellant.

Supreme Court

*No. 2005AP1492–CR. Oral argument April 11, 2007.
—Decided July 18, 2007.*

2007 WI 107

(Also reported in 735 N.W.2d 505.)

320

For the defendant-appellant-petitioner there were briefs and oral argument by *Brian C. Findley,* assistant state public defender.

For plaintiff-respondent the cause was argued by *Christopher G. Wren,* assistant attorney general with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. DAVID T. PROSSER, J. This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (2005–06).[1]

¶ 2.  We are asked to address whether a juvenile is entitled to sentence credit for the time he spends in custody under a juvenile commitment or an extension of a juvenile commitment, pending his conviction and sentencing on an adult charge.

¶ 3.  Marcus W. Johnson (Johnson) was adjudicated delinquent on one count each of theft and disorderly conduct and two counts of battery. He was committed to a secure juvenile institution. While confined under this commitment at an institution, Johnson committed a battery against another resident. He was arrested and charged with felony battery as an adult. He was later convicted and sentenced on that charge. At the sentencing hearing, Johnson requested 608 days of sentence credit for his time in custody from his arrest until sentencing.

¶ 4.  The circuit court denied Johnson's request for sentence credit, concluding that the days spent in custody prior to sentencing on the adult battery charge

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise indicated.

were not connected with the battery charge for the purposes of Wis. Stat. § 973.155.[2] In its order denying Johnson's postconviction motion, the Dane County Circuit Court, David T. Flanagan, Judge, reasoned that, irrespective of the presence of a signature bond, Johnson's custody was not in connection with the battery because it was "virtually certain" that he would have been in custody under juvenile commitment regardless of the battery. In support of its order, the court cited Johnson's negative pattern of behavior over the period of his juvenile commitment, emphasizing that Johnson had accumulated a total of 233 charges and 497 days in security while confined under his juvenile commitment.

¶ 5.   The court of appeals certified the case to this court to determine "whether time spent confined under a juvenile commitment should be awarded as sentence credit against an adult sentence." The court of appeals noted that one of its prior decisions, *State v. Thompson,* 225 Wis. 2d 578, 593 N.W.2d 875 (Ct. App. 1999), appeared to conflict with the basic sentence credit principles set forth in *State v. Beets,* 124 Wis. 2d 372, 369 N.W.2d 382 (1985).

¶ 6.   In *Beets,* the court determined that where an adult defendant was arrested for burglary while on probation for drug offenses, and the burglary arrest caused the defendant's probation to be revoked, the defendant was not entitled to credit on his subsequent

---

[2] Wisconsin Stat. § 973.155(1)(a) provides that "[a] convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed." Credit is given for custody while awaiting trial, while being tried, and while awaiting sentencing after trial. Wis. Stat. § 973.155(1)(a)1., 2., and 3.

burglary sentence for time spent in custody after the sentence on the drug offenses because that "custody" was not "in connection with the course of conduct" for which the burglary sentence was imposed. The *Beets* court ruled that a sentence on one offense severs any connection with custody on an unrelated offense. *Id.* at 379. In *Thompson,* however, the court decided that the *Beets* sentence credit rule did not apply to confinement under a juvenile commitment because a juvenile commitment is not a sentence. *Thompson,* 225 Wis. 2d at 583.

¶ 7.   In its certification, the court of appeals noted that "[n]ow presented with circumstances different from those in *Thompson,* [the] decision in that case seems problematic and possibly inconsistent with basic sentence credit principles set forth in cases such as [*Beets*]." The court observed that "[u]nless there is a meaningful distinction for purposes of sentence credit between juvenile confinement and adult incarceration that we have not uncovered, it seems that either *Beets* or *Thompson* was wrongly decided."

¶ 8.   The case before us requires that we interpret *Beets* and *Thompson* to determine whether Johnson should be entitled to any sentence credit for time in custody from his arrest until his sentencing on the adult battery conviction. After careful examination of the cases, we conclude that it is not necessary for us to choose between *Thompson* and *Beets.* Rather, we distinguish *Thompson* on its facts and hold that *Beets* sentence credit principles apply in this case.

¶ 9.   Applying *Beets* sentence credit principles, we hold that Johnson is not entitled to sentence credit on the adult battery charge because the time he spent in custody between his arrest and his sentence was not custody "in connection with" the adult battery. First,

Johnson is not entitled to credit for time in custody from his arrest to the May 6, 2003, extension hearing in the juvenile court because, during that period, Johnson was subject to a juvenile commitment order based entirely on conduct preceding and unrelated to the adult battery. Therefore, under *Beets,* Johnson's 2002 extension of his juvenile commitment precluded any connection to the later adult battery. Second, Johnson is not entitled to credit for time in custody from the May 6, 2003, extension of his juvenile commitment up to the time of sentencing because, even though the adult battery was a factor in the juvenile court's decision to extend Johnson's juvenile supervision for another year, the circuit court (Judge Flanagan) determined that the juvenile court (Judge Nicks) would have extended Johnson's supervision even if that battery had never occurred. Therefore, Johnson's time in custody from the extension hearing to the time of sentencing was not in connection with the adult battery.

¶ 10.   Because the circuit court's determination is supported by the record, we affirm the circuit court and hold that Johnson is not entitled to sentence credit of 608 days. We do, however, remand the case to the circuit court for an evidentiary hearing to determine the reason why Johnson spent 32 days in the Dane County Jail between his arrest and sentencing for the battery charge and whether he is entitled to sentence credit for those 32 days.

## BACKGROUND FACTS
## AND PROCEDURAL HISTORY

¶ 11.   In June 2001 Johnson was adjudicated delinquent on one count each of theft and disorderly conduct and two counts of battery. This adjudication led to his commitment to a secure juvenile institution, the

324

Ethan Allen School (Ethan Allen). While at Ethan Allen, Johnson's institutional adjustment was reported as "poor," and he was unable to "maintain control over his behaviors." In December 2001 Johnson was transferred to the Mendota Juvenile Treatment Center (MJTC). His supervision was to expire on May 22, 2002; however, the Dane County Circuit Court, Diane Nicks, Judge (juvenile court) reviewed Johnson's case on May 20, 2002, and extended Johnson's supervision for a period of one year. The court based its decision on Johnson's prior record; his various needs, such as his psychological, mental health, educational, and social needs; and the status of his progress.

¶ 12. Less than two weeks later, on June 2, 2002, Johnson battered a resident at MJTC. According to the Dane County criminal complaint, Johnson was asked by staff to leave the dayroom after he began looking at another resident in a threatening manner. Johnson stood up as if to leave, but instead approached the resident and punched him in the mouth at least twice, causing the resident to lose two of his teeth. Johnson was arrested on a charge of battery on June 3, 2002. He remained confined at the MJTC because the MJTC was determined "the best and proper facility" for Johnson to stay at that time. On June 13, 2002, Johnson was transferred back to Ethan Allen in part because of Johnson's continuing lack of progress and the recent battery.

¶ 13. Johnson's initial appearance in the Dane County Circuit Court for the June 2002 felony battery charge was on July 16, 2002. At that time the court ordered a signature bond. The court explained to Johnson that with the signature bond, he would be returned to Ethan Allen.

¶ 14. Johnson waived a preliminary hearing, but demanded a reverse waiver hearing to determine whether the circuit court should transfer jurisdiction to the juvenile court. On December 5, 2002, following a hearing, Judge Flanagan denied Johnson's request for reverse waiver.

¶ 15. At a bench trial on February 27, 2003, Judge Flanagan found Johnson guilty of felony battery to an inmate in a secure juvenile treatment facility, in violation of Wis. Stat. § 940.20(1) and the provisions of Wis. Stat. § 939.635 (2001–02). He continued the signature bond, and Johnson was returned to Ethan Allen.

¶ 16. On May 6, 2003, the juvenile court extended Johnson's juvenile supervision for another year. Judge Nicks relied explicitly on a court report prepared by the State of Wisconsin Department of Corrections, Division of Juvenile Corrections (DOC), supporting the DOC's request for Johnson's extension. The report included Johnson's prior history and commentary on his adjustment to placement. The report revealed that, upon Johnson's transfer from MJTC to Ethan Allen in June 2002, Johnson accumulated nine additional charges for disobeying orders, disruptive conduct, threats to staff, attempted battery to staff, creating an unsanitary condition, and inappropriate sexual conduct. Between July 2002 and December 2002, Johnson accumulated 45 additional charges at Ethan Allen, causing multiple relocations within Ethan Allen to areas with increased security. The report recounted Johnson's June 2002 battery and also noted that Johnson was charged criminally with another battery that occurred in November 2002, in Waukesha County, when Johnson and another resident pushed a third resident to the ground causing him to strike his head, and then proceeded to stomp on the resident.

¶ 17. The report also commented on Johnson's progress:

[Johnson] appears to be having problems in the classroom setting. He continues to accumulate room confinement hours for not following class rules, disruptive behavior, disrespect to staff, lack of effort at school, and refusal. Marcus appears to struggle with following the rules of the classroom and respecting those in positions of authority. His lack of respect for his teachers is a serious concern and he will have to work hard to learn how to respect those with authority.

The report noted that Johnson was meeting with his psychologist on a regular basis and that his sessions with the psychologist were working well. Johnson also met with a psychiatrist and was prescribed medication for his behavioral problems. However, Johnson was reported for his misuse of medication after saving rather than taking the medication.

¶ 18. The report noted:

[Johnson] continues to struggle with remaining free of verbally and physically aggressive behaviors. He is frequently verbally aggressive and disrespectful to his teachers and other school personnel. [Johnson] has had numerous physically aggressive incidents as well since his last extension hearing. As a result of his inability to control his anger, [Johnson] has proceeded to batter t[w]o youth which subsequently has led to ... two Battery by Prisoner cases pending in the Adult courts of Waukesha and Dane Counties. [Johnson] needs to get himself under control.

The report stated that Johnson was in the AODA education program at MJTC; however, due to the frequency of his security confinements and numerous behavior problems, he was never able to successfully complete the program. The report stated that Johnson

327

had had six security confinements during the reporting period, but "[t]o his credit ... he has shown some improvement in his behavior by remaining out of security for the last two months." The report noted that Johnson had "only recently demonstrated his ability to interact at least minimally appropriately with his peers" and that he had "most certainly struggled over the last year to have positive relationships with his peers as ... seen by his numerous security confinements and verbally and physically aggressive actions toward his peers."

¶ 19. The report further noted that Johnson was working on improving his social skills and that much work in this area would be needed for a lengthy period of time. The report explained why extension was appropriate:

> At this time, an extension of [Johnson's] Dispositional Order is appropriate. He has not successfully completed any of the treatment programming deemed appropriate for him such as the Cognitive Intervention Program, the Anger Management program, Victim Awareness and the Foundations of Recovery AODA Program. An extension of his commitment would also allow for his pending adult charges to be settled in the Adult courts of Dane and Waukesha Counties.

¶ 20. The report also explained why no efforts had been made to return Johnson to his home:

> At this time, no efforts have been made to return [Johnson] to the parental home. [Johnson] has consistently demonstrated behaviors that have warranted retention in a secure correctional facility. When [Johnson] decides to act appropriately and participate in and successfully complete the treatment programming deemed appropriate for him, he will then be considered for a return to the community. Until such

328

time, [Johnson] will need to be retained within the confines of a secure correctional setting for the protection of the public.

The report concluded with the final recommendations:

It is respectfully recommended that Marcus Johnson's supervision with the Department of Corrections, Division of Juvenile Corrections be extended for a period of one year or as much time as the court deems appropriate. An extension of his juvenile supervision would allow an adequate amount of time for [Johnson] to participate in treatment programming as well as for an adequate amount of time for community supervision once he is felt to be appropriate for a return to the community.

¶ 21. Eight months into his second extension, Johnson was sentenced on the June 2002 battery. On February 10, 2004, Judge Flanagan sentenced Johnson to 18 months initial confinement followed by four-and-a-half years of extended supervision.[3] Johnson then requested 608 days of sentence credit for the time from his arrest to sentencing.[4] The State contested Johnson's request, and the court ordered the parties to submit briefs on whether sentence credit was appropriate.

---

[3] Johnson's second November 2002 battery charge was read in at sentencing against the wishes of the assistant district attorney in Waukesha County where the second offense occurred.

[4] In its certification, the court of appeals questioned whether Johnson should be credited with 617 days. Because we do not grant sentence credit, we do not attempt to determine the proper calculation.

We note that, for reasons not apparent from the record, Johnson did not pursue his right to a speedy trial, and the prosecution did not move swiftly.

329

¶ 22. On April 22, 2004, the court denied Johnson's request for sentence credit. The court noted that a signature bond was authorized for Johnson from July 16, 2002, until his sentence on February 10, 2004. The court stated that it was "aware of no basis whatsoever for concluding that the defendant was 'in custody' as to the offense in question after the opportunity for signature bond was provided."[5] The court concluded that "[c]learly, there [wa]s no basis whatsoever to award credit for any [time] spent in custody on and after the date the signature bond was authorized."

¶ 23. As to the period between the arrest and the signature bond, the court distinguished *Thompson* and denied sentence credit on the basis of "the extremely high probability" that Johnson would have been in custody regardless of the battery. The court based its decision on the presentence investigation report (PSI) and a February 9, 2004, email update from the DOC. The court noted that the PSI and email update "set out a most troubling picture of a virtually incorrigible young offender" and revealed that Johnson had a total of 233 charges and 497 days in security.[6]

---

[5] Because Johnson was on a signature bond, he was eligible for pretrial release on the battery charge. This distinguished him from a defendant unable to post cash bail before trial. Johnson was not released, however, because he was subject to the preexisting juvenile commitment order.

[6] It is important to note that the circuit court did not have the entire record before it when it denied sentence credit. On December 19, 2006, this court granted Johnson's motion to supplement the record with the May 6, 2003, extension order and transcript of the May 6, 2003, extension hearing. In addition, the court ordered that the record be supplemented with a copy of the March 31, 2003, court report prepared by the Department of Corrections, Division of Juvenile Corrections.

¶ 24.  Johnson filed a postconviction motion on March 21, 2005, claiming that the circuit court erred when it distinguished *Thompson*. Johnson also claimed that his trial counsel was ineffective in not opposing a signature bond and then in failing to ask that the signature bond be changed to cash bail when it became apparent that Johnson would not be released from custody despite the signature bond. Johnson also argued that the signature bond was a nullity due to his mental retardation and other intellectual deficits.

¶ 25.  The circuit court denied Johnson's postconviction motion. The court denied the first claim because it sought to relitigate the issue of sentence credit that the court had already resolved in its April 22, 2004, order. The court addressed Johnson's ineffective assistance of counsel claim and found that trial counsel's performance was not deficient because the presence of cash bail would not have changed the outcome of the case. The court explained that the basis for denying sentence credit for the period before authorization of the signature bond had equal application to the entire period of custody. The court reasoned that "[h]ad the defendant been held on cash bail, pre-sentence credit would not have been proper given the virtual certainty that he would have remained in custody regardless." The court quoted from the April 22, 2004, order denying sentence credit, which discussed Johnson's negative pattern of behavior over the period of his custody. The court also dismissed Johnson's claim that the signature bond was invalid due to Johnson's intellectual deficits, concluding that such a holding would lead to the remarkable result that a defendant with mental limitations would not be permitted a signature bond. In addition, the court noted that the signature bond had

no bearing on Johnson's effort to obtain sentence credit for the reasons previously stated.

¶ 26. Johnson appealed, and the court of appeals certified the case to this court. The court of appeals noted that the decision in *Thompson* might conflict with the decision in *Beets,* and therefore certified the case so that we could determine the proper method for determining sentence credit under Wis. Stat. § 973.155.

## STANDARD OF REVIEW

¶ 27. The issue in this case requires the court to determine the appropriate amount of sentence credit for Johnson under Wis. Stat. § 973.155(1)(a). Such an inquiry requires the court to interpret Wis. Stat. § 973.155. Statutory interpretation presents a question of law that we review de novo. *State v. Floyd,* 2000 WI 14, ¶ 11, 232 Wis. 2d 767, 606 N.W.2d 155.

¶ 28. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.,* ¶ 46. Where this process yields a plain meaning, the statute is not ambiguous and is applied according to this ascertainment of its meaning. *Id.* If the language is ambiguous, however, we look beyond the language and examine the scope, history, context, and purpose of the statute. *Id.,* ¶ 48.

¶ 29. When a circuit court makes findings of fact, the court's findings are subject to a clearly erroneous standard of review. *State v. Turner,* 136 Wis. 2d 333, 343, 401 N.W.2d 827 (1987).

## ANALYSIS

¶ 30. We begin with the language of Wis. Stat. § 973.155. Wisconsin Stat. § 973.155 governs sentence credit and provides in pertinent part:

> (1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody *in connection with the course of conduct for which sentence was imposed.* As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
>
> 1. While the offender is awaiting trial;
>
> 2. While the offender is being tried; and
>
> 3. While the offender is awaiting imposition of sentence after trial.

Wis. Stat. § 973.155(1)(a)1., 2., and 3. (emphasis added).

¶ 31. Wisconsin Stat. § 973.155(1)(a) requires two determinations. *See State v. Gavigan,* 122 Wis. 2d 389, 391, 362 N.W.2d 162 (Ct. App. 1984). The first is whether Johnson was "in custody." *Id.* The second is whether the custody was "in connection with course of conduct for which sentence was imposed." *Id.* The parties do not dispute, and we agree, that time spent in

333

a juvenile correctional facility was time spent in custody. *See* Wis. Stat. § 946.42(1)(a); *see also State v. Magnuson,* 2000 WI 19, ¶ 15, 233 Wis. 2d 40, 606 N.W.2d 536 (construing the meaning of custody in Wis. Stat. § 973.155 and relying on the statutory definition of custody found in the escape statute, Wis. Stat. § 946.42(1)(a)).

¶ 32.   Thus, the critical question is whether the 608 days of presentence custody were served "in connection with the course of conduct for which [the battery] sentence was imposed."

¶ 33.   We are reminded that "[c]omputation of sentence credits sometimes presents complex, conflicting and confusing issues to a sentencing court." *State v. Demars,* 119 Wis. 2d 19, 27, 349 N.W.2d 708 (Ct. App. 1984.) This case is no exception. The resolution of this case turns on how narrowly or broadly we interpret the phrase, "in connection with the course of conduct for which sentence was imposed." Under a narrow interpretation, Johnson would not be entitled to any sentence credit because he would have been in custody for the 608 days regardless of the June 2002 battery charge. Under a very broad interpretation, Johnson would be entitled to full sentence credit because the June 2002 battery was always a factor in his continuing custody and therefore his custody was "in connection with" the June 2002 battery, even if it was an insignificant factor in decisions to keep Johnson in custody.

¶ 34.   Under other facts and circumstances, the phrase, "in connection with the course of conduct for which sentence was imposed," has been deemed ambiguous and subject to different reasonable interpretations. *See Gavigan,* 122 Wis. 2d 389 at 392. We conclude that the phrase is ambiguous under these circumstances as well because it is open to more than one

reasonable interpretation. Consequently, we may refer to legislative history to discern the section's intent and purpose. *Floyd,* 232 Wis. 2d 767, ¶ 20.

A. Legislative History and Purpose of Wis. Stat. § 973.155

¶ 35. Wisconsin Stat. § 973.155 was enacted after this court's call for action in *Klimas v. State,* 75 Wis. 2d 244, 250–51, 249 N.W.2d 285 (1977).[7] *See State v. Boettcher,* 144 Wis. 2d 86, 91, 423 N.W.2d 533 (1988). *Klimas* was the first opinion of this court requiring circuit courts to credit time spent in custody against a sentence ultimately imposed. *See Boettcher,* 144 Wis. 2d at 90. The *Klimas* court concluded that it was a violation of equal protection of the law for a court not to award sentence credit for time spent in custody prior to sentencing on account of a defendant's financial inability to post bail. *Klimas,* 75 Wis. 2d at 245. Although the *Klimas* holding was limited to sentence credit in cases of financial inability to post bail, the court encouraged adoption of a broader rule based on existing federal law. *Id.* at 251. The court noted that 18 U.S.C.A. § 3568 required sentence credit for all custodial time in satisfaction of the imposed sentence. *Id.*

---

[7] Notes of the Legislative Council reveal that the need for state legislation was also fueled by this court's decisions in *State ex rel. Solie v. Schmidt,* 73 Wis. 2d 76, 242 N.W.2d 244 (1976) (holding that period of 82 days spent in jail while awaiting probation revocation proceedings must, on due process grounds, be credited against the sentence to be served following revocation), and *Kubart v. State,* 70 Wis. 2d 94, 233 N.W.2d 404 (1975) (inviting the legislature to eliminate due process problems caused by the statutory prohibition against crediting time spent in jail after sentencing but prior to arrival at the prison). *See* Wisconsin Legislative Council Report No. 6 to the 1977 Legislature: Legislation Relating to Credit for Time in Jail, 1.

¶ 36. The legislature responded by enacting Wis. Stat. § 973.155. Ch. 353, Laws of 1977; 1977 S.B. 159. Notes of the Legislative Council make clear that the federal law referred to in *Klimas,* as well as the Model Penal Code, influenced the passage of the sentence credit statute.[8] Wisconsin Legislative Council Report No. 6 to the 1977 Legislature: Legislation Relating to Credit for Time in Jail, 2; *see Boettcher,* 144 Wis. 2d at 92. As stated in *Floyd,* "[u]nderlying the adoption of Wis. Stat. § 973.155 was the intent to bring the law of Wisconsin into conformity with the broad federal statute, which provided for sentence credit for any pre-sentence confinement period, whether arising from a financial inability to post bail, unwillingness to grant release on bail, or for the purpose of examination." *Floyd,* 232 Wis. 2d 767, ¶ 22 (citing *Boettcher,* 144 Wis. 2d at 91–92; and Legislative Council Notes to 1977 Senate Bill 159, § 9).

¶ 37. This court has recognized that the purpose of Wis. Stat. § 973.155 in providing sentence credit is "to afford fairness" and "ensure 'that a person not serve more time than he is sentenced.'" *Floyd,* 232 Wis. 2d 767, ¶ 23 (quoting *Beets,* 124 Wis. 2d at 379).

---

[8] Legislative Council notes provide:

> Senate Bill 159 would establish clear statutory guidelines for handling and crediting all time spent in confinement, regardless of the status of the person involved at the time of confinement. If enacted, the Bill would clarify a currently unclear and chaotic area of law, as discussed above, and would bring Wisconsin law into conformity with the recommended minimum criminal justice sentencing standards of the American Bar Association, Section 7.09 of the American Law Institute's Model Penal Code, federal criminal sentencing procedures as set forth in 18 U.S.C. s. 3568 and the laws of many other states.

Wisconsin Legislative Council Report No. 6 to the 1977 Legislature: Legislation Relating to Credit for Time in Jail, 2.

## B. Interpretation of *Beets* and *Thompson*

¶ 38. With this context and purpose of Wis. Stat. § 973.155 in mind, we turn to the task given us by the certification from the court of appeals, namely to determine "whether time spent confined under a juvenile commitment should be awarded as sentence credit against an adult sentence." To answer this question, we are called upon to examine *Beets* and *Thompson* and either to reconcile the seeming discrepancies between the two cases or to overrule one in favor of the other. We begin with summaries of the two cases.

¶ 39. In *Beets,* Robert Darnell Beets (Beets) was on probation for his conviction of two drug crimes when he was arrested for burglary and taken into custody on the burglary charge. *Beets,* 124 Wis. 2d at 374. A few days later he was also in custody on a probation hold for the alleged violation of his probation. *Id.* About one month later, his probation on the drug offenses was revoked and later Beets was sentenced on the drug crimes. *Id.* at 375. For the period from his arrest to his sentencing, Beets was given credit for his custody in connection with the sentences on the drug crimes. *Id.*

¶ 40. About six months after his sentencing on the drug crimes, Beets pled guilty to the burglary charge and was sentenced to a term that was to run concurrent with the previously imposed drug sentences. *Id.* Beets was granted sentence credit toward the satisfaction of his burglary charge from the date of arrest to the date he commenced his prison sentence on the drug crimes.[9] *Id.* Beets brought a postconviction motion asserting that he was also entitled to credit for the

---

[9] The *Beets* court did not rule on the propriety of awarding dual credit. *State v. Beets,* 124 Wis. 2d 372, 379 n.5, 369 N.W.2d 382 (1985).

period subsequent to his sentencing on the drug crimes while he was awaiting resolution of the pending burglary charge. *Id.* The postconviction motion was denied, and the court of appeals affirmed. *Id.* at 376.

¶ 41.   The question before this court in *Beets* was:

> [W]hether a person who is on probation for an earlier crime (delivery of controlled substance), is apprehended for the commission of a new and separate crime (burglary), and then, after a period of custody on a probation violation hold, is revoked and is sentenced to state prison on the earlier drug crime is entitled to time credit on the burglary sentence for the days served under the prison sentence for the drug crime while awaiting trial and eventual sentencing on the second crime—the crime of burglary.

*Id.* at 373–74.

¶ 42.   We concluded that Beets was not entitled to sentence credit on the burglary sentence for the period following his sentence on the drug crimes. *Id.* at 374. Beets argued that his custody upon being sentenced for the drug crimes was "related to the offense [burglary] for which the offender is ultimately sentenced" because it was the burglary arrest that triggered the revocation of his probation. *Id.* at 377. We rejected this argument, asserting that "the sentence on the drug charges was not related or connected to the burglary course of conduct." *Id.* at 378. Citing *Flowers v. DHSS,* 81 Wis. 2d 376, 386, 260 N.W.2d 727 (1978), we explained that "the element of punishment in parole revocation is attributable to the crime for which the parolee was originally convicted and sentenced." *Id.* We continued, " 'Revocation is thus a continuing consequence of the original conviction from which parole was granted.' " *Id.* (quoting *Flowers,* 81 Wis. 2d at 386).

¶ 43. We held that the *Flowers* principle, which addressed parole revocation, was equally applicable to probation revocation. *Id.* We concluded, therefore, that "any days spent in confinement after the revocation of probation and the imposition of sentence [arose] out of, and [were] connected not with the burglary, but with the unrelated conduct which resulted in the drug convictions more than a year earlier." *Id.*

¶ 44. We affirmed the court of appeals' holding "that any connection which might have existed between custody for the drug offenses and the burglary was *severed* when the custody resulting from the probation hold was converted into a revocation and sentence." *Id.* at 379 (emphasis added). We continued:

> From that time on, Beets was in prison serving an imposed and unchallenged sentence; and whether he was also awaiting trial on the burglary charge was irrelevant, because his freedom from confinement—his right to be at liberty—was not in any way related to the viability of the burglary charge. His ability to make bail on the burglary charge became immaterial. Even had the burglary charge been dismissed, he would still have been in confinement. Thus, there is no logical reason why credit should be given on the burglary charge for his service of sentence on a separate crime.

*Id.*

¶ 45. In *Thompson*, the court of appeals was faced with a similar fact situation, except that *Thompson* involved revocation of *juvenile* aftercare supervision (or juvenile "parole") as a result of a new offense committed shortly after the defendant's 18th birthday. In that case, Dwayne E. Thompson (Thompson) was arrested for operating a vehicle without the owner's consent, fleeing from an officer, and possession of marijuana. *Thompson,* 225 Wis. 2d at 580. At the time of his arrest,

Thompson was still on juvenile aftercare supervision for two counts of first-degree recklessly endangering safety, while armed, endangering safety by use of a dangerous weapon, and possession of a dangerous weapon by a child. *Id.* Following his arrest, Thompson made his initial appearance, bail was set, a "hold" for violation of aftercare supervision was placed on Thompson, and he remained in adult custody at the Milwaukee County Jail. *Id.* About a month later, Thompson's juvenile aftercare supervision was revoked as a result of the new offenses, and he remained in custody at the Milwaukee County Jail. *Id.* About two months later, Thompson pled guilty to the three charges. His sentencing was adjourned; however, he remained in custody at the Milwaukee County Jail. *Id.* About a week later, he was returned to Ethan Allen to continue serving his juvenile commitment after revocation and to await his adult court sentencing. *Id.* Sentencing was delayed three times. *Id.* at 580–81. About three months later, Thompson was sentenced for the three adult charges. *Id.* at 581.

¶ 46. At the sentencing, the circuit court awarded Thompson credit for the days spent in custody at the Milwaukee County Jail between his arrest and his return to Ethan Allen. *Id.* The court, however, denied Thompson's request for credit for the days spent in custody at Ethan Allen until the day of sentencing. *Id.*

¶ 47. Thompson filed a postconviction motion, which the circuit court denied. The circuit court concluded that Thompson was not entitled to credit for time spent at Ethan Allen because that custody was "in connection with a juvenile commitment after his conduct resulted in revocation, and had absolutely no connection whatsoever with the course of conduct for

340

which sentence was imposed in this case." *Id.* at 582 (internal quotations omitted).

¶ 48. The court of appeals reversed. Thompson conceded that if custody at Ethan Allen constituted a sentence, then *Beets* would govern and Thompson would not be entitled to credit. *Id.* at 583. He argued, however, that his custody at Ethan Allen did not constitute a sentence and, therefore, *Beets* did not govern the case. *Id.* at 583–84. The court of appeals agreed, citing authority for the proposition that "a juvenile court's dispositional commitment of a delinquent to Ethan Allen (and, by extension, the commitment period following juvenile parole revocation) is not a 'sentence.' " *Id.* at 583.

¶ 49. In an extensive footnote, the court adopted passages from Thompson's brief to the effect that "although certain analogies may be drawn between adult sentencing, after revocation of probation or parole, and juvenile commitment, after revocation of aftercare, significant, substantive differences exist." *Id.* at 584 n.2. There is a difference between an adult whose probation or parole has been revoked and a juvenile whose aftercare has been revoked. The former is serving a sentence and can be released only pursuant to a discretionary parole grant (after attaining parole eligibility) or upon mandatory release. *Id.* The latter can be returned to the community on aftercare or through a change in placement and is not subject to parole eligibility or a mandatory release date. *Id.*

¶ 50. A second difference is that an adult's criminal sentence is shortened by the amount of applicable sentence credit, but time spent in custody is not creditable against the juvenile delinquency commitment. *Id.*

¶ 51. A third difference is that, unlike revocation of parole, revocation of juvenile aftercare supervision is

not continuing punishment for the offense that led to the juvenile's original delinquency adjudication. *Id.* Rather, revocation of juvenile aftercare is based on "the juvenile authorities' determination that [the juvenile's] new offense requires continuing *treatment* in a secured correctional facility." *Id.* In short, "Thompson's continuing confinement in the juvenile system was clearly and intimately related to the pending charge." Holding Thompson in juvenile custody was less for continuing punishment and more for continuing custody, while the juvenile system waited for the adult court disposition. *Id.*

¶ 52. After distinguishing *Beets* and noting these differences, the *Thompson* court likened the *Thompson* case to *State v. Baker,* 179 Wis. 2d 655, 508 N.W.2d 40 (Ct. App. 1993), in which the court concluded that the defendant was entitled to sentence credit for the time he was in secure juvenile detention awaiting waiver of juvenile jurisdiction, against the sentence imposed following his waiver to adult court. *Thompson,* 225 Wis. 2d at 585. The *Thompson* court noted that failure to grant credit in this case would be "to simply accept that, whenever an adult charged with a crime remains under the jurisdiction of a juvenile court commitment, the State, unilaterally, could place the adult in custody at a juvenile facility while awaiting trial and sentencing, and could therefore preclude the sentencing court from awarding credit for pre-sentence custody." *Id.* at 586. The court held that such potential manipulation of sentence credit was inconsistent with the intent of Wis. Stat. § 973.155. *Id.* The court concluded:

> Therefore, in the *unusual circumstances* of this case, we conclude that although Thompson's time at Ethan Allen *also* could be considered to have been in connection with his juvenile commitment, "regardless

of [that] basis for the confinement," his custody at Ethan Allen was "connected to the offense for which sentence [was] imposed."

*Id.* (first emphasis added).

¶ 53.   In its certification in the present case, the court of appeals noted that "[u]nless there is a meaningful distinction for purposes of sentence credit between juvenile confinement and adult incarceration that we have not uncovered, it seems that either *Beets* or *Thompson* was wrongly decided." We do not think, however, that we have to choose between *Beets* and *Thompson* to resolve the case before us. We choose instead to distinguish *Thompson* on the facts and "unusual circumstances" of that case.

¶ 54.   Although the *Thompson* court appeared to preclude application of *Beets* on the basis that a juvenile commitment was not a sentence, we do not think that *Thompson* requires us to preclude application of *Beets* and other applicable adult sentencing cases to the facts and circumstances here. This is so because *Thompson* ultimately sidestepped the application of *Beets* by distinguishing between the purpose of revocation of juvenile aftercare supervision and the purpose of revocation of probation. *See Thompson,* 225 Wis. 2d at 584 n.2. While the *Beets* court noted that revocation of probation is continuing punishment for the original, underlying offense, *Beets,* 124 Wis. 2d at 378, the *Thompson* court noted that revocation of juvenile aftercare supervision is not continuing punishment for the original offense but continuing treatment required by the new offense. *Thompson,* 225 Wis. 2d at 584 n.2. Thus, the *Thompson* court concluded that Thompson's continuing confinement "was clearly and intimately related to the pending charge." *Id.*

343

¶ 55. This case does not involve revocation of juvenile aftercare supervision, where a juvenile who was once at liberty is taken into custody for a new offense. This case involves a juvenile who was not at liberty but was still in custody under a juvenile commitment when he committed a new offense. Therefore, *Thompson* is distinguishable.

¶ 56. Nonetheless, Johnson relies on *Thompson* to argue that juvenile confinement is not a sentence and, therefore, the *Beets* rule—i.e., that a sentence on one offense severs any connection with custody on an unrelated offense—does not apply.

¶ 57. We do not think, however, that the distinction between custody following a juvenile commitment and custody following an adult sentence precludes application of *Beets* under the facts and circumstances of this case. While *Thompson*'s rationale that the differences between revocation of juvenile aftercare supervision and revocation of parole/probation may warrant preclusion of *Beets* in certain situations, the distinction between custody following juvenile commitment and custody following adult conviction does not warrant the preclusion of *Beets* sentence credit principles to all juvenile commitments.

¶ 58. *Thompson* noted that an adult serving a sentence could be released only pursuant to a discretionary parole grant or upon mandatory release, while a juvenile could be returned to the community at any time. *Id.* Johnson cites this difference between a juvenile commitment and an adult sentence to support his proposed bright line rule that "a juvenile held in juvenile corrections pending criminal sentencing is *always* held in custody in connection with the criminal charges." (Emphasis added.) Johnson argues that because a juvenile commitment is not a determinate

344

sentence of fixed duration and because the needs of the juvenile are individually assessed, *see* Wis. Stat. § 938.01(2)(c) and (f), DOC authorities take pending criminal charges into account when deciding whether to continue a juvenile's confinement or to release the juvenile on aftercare supervision. *See* Wis. Stat. § 938.357(4)(a). Thus, Johnson argues, pending criminal charges are always connected to continued confinement in the juvenile correctional system.

¶ 59. We fail to see how an adult *indeterminate* sentence, like the sentences in *Beets,* is different from a juvenile commitment. Under an indeterminate sentence, individual needs and circumstances are assessed to determine whether to grant discretionary parole, much like DOC review of a juvenile commitment. *See* Wis. Stat. § 304.06; Wis. Admin. Code PAC § 1.06 (Oct., 2000); *State ex rel. Clarke v. Carballo,* 83 Wis. 2d 349, 265 N.W.2d 285 (1978); *State ex rel. Tyznik v. DHSS,* 71 Wis. 2d 169, 238 N.W.2d 66 (1976). Therefore, one could argue that, once a defendant becomes eligible for discretionary parole, all pending criminal charges are factors in the Parole Commission's decision to deny parole and keep a defendant in custody on an unrelated charge.

¶ 60. *Beets* involved indeterminate sentences; nevertheless, the *Beets* court did not adopt the kind of blanket rule that Johnson proposes. In fact, to adopt such a rule and hold that "a juvenile held in juvenile corrections pending criminal sentencing is *always* held in custody in connection with the criminal charges" would allow what the *Beets* court cautioned against: "affording a right to credit against confinement in criminal matters where the period of confinement has nothing to do with the matter for which sentence credit is sought." *Beets,* 124 Wis. 2d at 379.

¶ 61. Because we see no reason to treat custody following a juvenile commitment or an extension of a juvenile commitment as fundamentally different from custody following an adult indeterminate sentence, we apply *Beets* sentence credit principles to the facts of this case. To the extent that *Thompson* would preclude application of *Beets* under these particular circumstances, it goes too far.

C. Application of *Beets*

¶ 62. On a preliminary note, it should be understood that, to some extent, *Beets* does not rest on all fours with the facts of this case. The *Beets* rule—that a sentence on one offense severs any connection with custody on an unrelated offense—applies neatly in situations where the two sentences are based on decidedly different courses of conduct.

¶ 63. Therefore, the *Beets* rule applies neatly in this case to the period of time after Johnson's arrest up until the May 6, 2003, extension hearing. During that time, Johnson was already in custody as a result of a May 22, 2002, order extending Johnson's placement for one year. That order preceded the June 2002 battery and was based on an entirely unrelated course of conduct. Thus, under the *Beets* rule, the May 2002 extension precluded, rather than "severed," any connection to the June 2002 battery. The 2002 extension did not "sever" a connection with the battery because there never was a connection.

¶ 64. The question of sentence credit for the time from the May 6, 2003, extension until the time of sentencing is not directly answered by application of *Beets* because it is not clear whether the custody resulting from this extension is connected with the

course of conduct (June 2002 battery) for which sentence was imposed. In a sense, the situation in this case implicates a situation that *Beets* did not address; that is, a situation where the acts for which the first and second sentences are imposed are "truly related." *See Beets,* 124 Wis. 2d at 383 (stating that "unless the acts for which the first and second sentences are imposed are truly related or identical, the sentencing on one charge severs the connection between the custody and the pending charges. And the consequences of even that contingency [are] not clear—certainly not decided herein.").

¶ 65.  In this case, the question is not so much what happens when the course of conduct is related; rather, the question is how large a factor did the related course of conduct (the June 2002 battery) play in the decision to extend Johnson's juvenile commitment in May 2003.

¶ 66.  There is no question that the June 2002 battery was the course of conduct for which the adult sentence was imposed. The circuit court (Judge Flanagan) also found that the June 2002 battery was a factor in the juvenile court's decision on May 6, 2003, to extend Johnson's supervision for another year. However, the circuit court also found that there was an "extremely high probability" that Johnson's extension would have been extended regardless of the June 2002 battery. In its postconviction order, the circuit court reiterated that sentence credit was inappropriate "given the virtual certainty that [Johnson] would have remained in custody regardless" because of the extension of his juvenile commitment.

¶ 67.  The issue, therefore, is how large a factor did the June 2002 battery have to play in the decision to extend Johnson's juvenile supervision in 2003 for Johnson's juvenile custody to be "in connection with" the June 2002 battery.

¶ 68. To decide this issue, we must interpret the meaning of "in connection with." As previously noted, this phrase has been deemed ambiguous under other facts and circumstances. It is also ambiguous under these circumstances because it is subject to both a narrow and broad interpretation. Advocating for a broad interpretation, Johnson cites the dictionary meaning of "connection" ("being connected" or "an association or relationship") and the Criminal Jury Instruction Committee to support his proposition that the word "connection" applies to even limited relationships. According to the Criminal Jury Instruction Committee, "The requirement that custody be 'in connection with' the course of conduct means simply that the custody must be, at least in part, the result of a legal status . . . stemming from the course of conduct for which sentence is being imposed." Wis. JI—Criminal SM34A at IIIB (1995).

¶ 69. Such an expansive interpretation of the phrase "in connection with," however, has been discounted in applicable case law and runs contrary to the purpose of the sentence credit statute. *Beets* suggests that a narrower interpretation of the statute is appropriate. In *Beets,* we applied a narrow interpretation of Wis. Stat. § 973.155 to explain why sentence credit was inappropriate. We stated that, from the time Beets began serving his sentence on the drug charges, it became irrelevant that he was also awaiting trial on the burglary charge. This was so

> because [Beets'] freedom from confinement—his right to be at liberty—was not in any way related to the viability of the burglary charge. His ability to make bail on the burglary charge became immaterial. Even had the burglary charge been dismissed, he would still have been in confinement. Thus, there is no logical reason

348

why credit should be given on the burglary charge for his service of sentence on a separate crime.

*Beets,* 124 Wis. 2d at 379.

¶ 70.   We think a similar interpretation is appropriate in this case to determine whether Johnson's custody was in connection with the June 2002 battery. The underlying purpose of the sentence credit statute is to afford fairness by ensuring "that a person not serve more time than that for which he is sentenced." *Id.* A narrow interpretation of the phrase "in connection with" furthers this purpose. If Johnson would have been in custody even if the June 2002 battery had never occurred, he is not being treated unfairly by not receiving sentence credit for that time.

¶ 71.   Thus, we must determine whether Johnson would have been in custody even if the June 2002 battery had never occurred.

¶ 72.   In his April 22, 2004, ruling Judge Flanagan said:

> The intent of the statute seems obvious; if the defendant was in custody because of the conduct which leads to conviction, credit should be assigned. The corollary, however, appears equally plain; [i]f the defendant would have been in custody notwithstanding the conduct that led to conviction, no freedom was denied and no credit is due.
>
> . . . .
>
> Had there been no criminal conduct and no arrest, defendant Thompson would have been subject only to the limited supervisory custody of the juvenile "aftercare" parole. . . .
>
> By contrast, this defendant [Johnson] is in a very

349

different circumstance. *Had he committed no battery [in June 2002], there is no basis upon which this court could even suspect that he would not have remained in the custody of the Department* [of Corrections] *on June 4th and thereafter. . . .*

. . . Only if the court ignores the extremely high probability that the defendant would have been in custody regardless of the battery, can credit be assigned.

(Emphasis added.) In denying the postconviction motion on May 20, 2005, Judge Flanagan wrote:

[I]t was and remains crystal clear to this court that defendant's behavior during the period in question was such that there was no reasonable possibility that he would have been out of custody but for this prosecution. . . .

[H]is conduct was such that he would not have been out of custody even if this prosecution never took place.

¶ 73.  We view these statements as findings of fact, applying a narrow interpretation of the "in connection with" language in Wis. Stat. § 973.155. We believe this interpretation is correct.

¶ 74.  The record in this case was supplemented at the request of the defendant after we accepted certification. The supplemental material involves the May 6, 2003, hearing on the extension of Johnson's juvenile commitment. When Judge Flanagan made his "extremely high probability" assessment about the likelihood of Johnson's continuing commitment, he did not have the May 6, 2003, extension order, hearing transcript, or the court report on which Judge Nicks so heavily relied when deciding to extend Johnson's supervision. We described in detail the contents of that court report in our discussion of the facts. If Judge Flanagan

had had the information provided to Judge Nicks, that information would have fortified his assessment that Johnson's juvenile commitment would have been extended even if the June 2002 battery had not occurred.

¶ 75. The DOC's recommendation to extend supervision focuses primarily on the 54 charges that Johnson accumulated while in custody, his lack of progress, and the perceived need to extend his supervision to allow Johnson to participate in treatment programming. This is not a case where the juvenile court was simply holding Johnson in custody to see what happened on his battery sentence.

¶ 76. We therefore affirm the circuit court's finding that Johnson would have been in custody even if the June 2002 battery had not occurred. This finding is not clearly erroneous. It is amply supported by the record. Thus, Johnson's time spent in juvenile custody was not in connection with the June 2002 battery, and he is not entitled to sentence credit under Wis. Stat. § 973.155 for the entire 608 days he spent in custody after his arrest awaiting adult sentencing.

¶ 77. The fact that Johnson was on signature bond from July 16, 2002 to February 10, 2004, is not significant in this case because of Johnson's preexisting juvenile commitment order.

¶ 78. Although the signature bond seemingly made Johnson eligible for pretrial release and "severed" the connection between his custody and the crime, its real effect was to send Johnson back to Ethan Allen. *Thompson* speaks of the potential manipulation of sentence credit by transferring a juvenile under adult court supervision to the custody of a juvenile commitment. *Thompson,* 225 Wis. 2d at 586. If Johnson's placement at Ethan Allen had deprived him of sentence credit that he was otherwise due, he might have had

cause to complain about the effectiveness of his counsel. In this case, however, the court permitted Johnson to return to the institution to which he was already committed. He did not lose sentence credit. If a secure juvenile facility is logically the best place to maintain custody of a juvenile who is subject to the jurisdiction of an adult criminal court, that placement, *in itself,* should not affect the juvenile's eligibility for sentence credit. But the juvenile does not have a right to remain locked up in a county jail so that he can earn credit against an adult sentence.

█

¶ 79. On the other hand, when a juvenile is kept in a county jail in connection with the pending prosecution of an adult crime, he is entitled to credit against the sentence for that crime. This was foreshadowed in *Beets* and actually applied in *Thompson.*[10]

¶ 80. Johnson argues that he was transferred to and placed in the Dane County Jail in connection with the June 2002 battery for a total of 32 days. The State concedes that the record is unclear why Johnson was held in the county jail rather than juvenile detention. If Johnson was held in the county jail because of the pending battery charge, he is entitled to credit for that time against the battery sentence, notwithstanding the fact that he would have been in custody somewhere else. However, if Johnson was being held in county jail for some reason unrelated to his battery charge—such as his placement in county jail was necessary to ensure the safety of other juveniles in juvenile detention—then

---

[10] In *State v. Thompson,* 225 Wis. 2d 578, 581, 593 N.W.2d 875 (Ct. App. 1999), the circuit court awarded Thompson sentence credit for time spent in custody at the Milwaukee County Jail between his arrest and his return to Ethan Allen.

Johnson should not be entitled to 32 days credit because custody in the county jail would not have been in connection with his June 2002 battery charge.[11]

## CONCLUSION

■■■■■

¶ 81.   We affirm the circuit court and hold that Johnson was not entitled to sentence credit for time spent in custody awaiting sentencing for his June 2002 battery. First, he was not entitled to credit for the time in custody from his arrest to the May 6, 2003, extension hearing in juvenile court because during that period Johnson was serving a commitment based entirely on conduct preceding and unrelated to the June 2002 battery. Therefore, under *Beets,* Johnson's 2002 juvenile extension precluded any connection to custody for the later adult battery. Second, Johnson is not entitled to credit for the period from the May 6, 2003, extension hearing up to the time of sentencing because, even though the adult battery charge was a factor in the juvenile court's decision to extend Johnson's juvenile supervision for another year, the circuit court (Judge Flanagan) determined that the juvenile court (Judge Nicks) would have extended Johnson's supervision even if the June 2002 battery had not occurred. That determination is supported by the record. Therefore, applying the reasoning in *Beets,* Johnson's custody was not in connection with the June 2002 battery. We remand the case, however, for the circuit court to hold an eviden-

---

[11] At a status conference on January 8, 2004, Johnson's attorney intimated that "they put him in the jail because it's an adult case, but because he's a juvenile, they put him in seg." We remand, however, for the court to hold a proper evidentiary hearing on this matter.

tiary hearing to determine whether the 32 days that Johnson spent in the Dane County Jail were in connection with his June 2002 battery charge.

*By the Court.*—The judgment and order of the circuit court are affirmed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.