Sherman MILLER, et al.,
Plaintiffs, Appellants,

v.

Michael DUKAKIS, etc., et al.,
Defendants, Appellees.

No. 91–1407.

United States Court of Appeals,
First Circuit.

Submitted Oct. 23, 1991.
Decided March 31, 1992.

---

8

Sherman Miller, on brief pro se.

Scott Harshbarger, Atty. Gen., and La-Donna J. Hatton, Asst. Atty. Gen., on brief, for defendants, appellees.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and CYR, Circuit Judge.

PER CURIAM.

This appeal primarily concerns the wages paid to the appellants, all "sexually danger-ous persons" (SDPs) who have been com-mitted, under the authority of Chapter 123A of the Massachusetts General Laws, to the Massachusetts Treatment Center for Sexually Dangerous Persons, and who work at the Treatment Center in a variety of jobs. The appellants contend that they are entitled to the minimum wage for their work, either (1) because they qualify as "employees" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 206(a), or (2) because the mini-mum wage is an essential element of their "right to treatment" under state and feder-al law. The defendants are state officials who bear some responsibility, direct or indi-rect, for the operation of the Treatment Center. The district court granted the de-fendants' motion for judgment on the pleadings and denied the appellants' motion for summary judgment. This appeal fol-lowed. We affirm.

*Fair Labor Standards Act*

■ In support of the claim that they are "employees" within the meaning of the FLSA, and therefore entitled to the mini-mum wage, the appellants style themselves as "patients" of the Treatment Center and then rely on a case holding that the FLSA applies to mental patients who work for the hospitals in which they reside. *Souder v. Brennan*, 367 F.Supp. 808, 812–13 (D.D.C. 1973). *See also Weidenfeller v. Kidulis*, 380 F.Supp. 445 (E.D.Wis.1974) (mentally retarded residents of "family group home" were entitled to minimum wage for work they did at the home). The government, on the other hand, argues (as the district court ruled) that the appellants should be regard-ed as "prisoners" rather than patients in this circumstance. The courts have uni-formly denied FLSA and state minimum wage law coverage to convicts who work for the prisons in which they are inmates. *See, e.g., Wentworth v. Solem*, 548 F.2d 773, 775 (8th Cir.1977) (expressing doubt that Congress intended to extend coverage of minimum wage law to convicts working in state prison industries); *Young v. Cut-ter Biological*, 694 F.Supp. 651, 656–7 (D.Ariz.1988); *Worsley v. Lash*, 421 F.Supp. 556 (N.D.Ind.1976); *Manville v. Board of Governors of Wayne State Uni-versity*, 85 Mich.App. 628, 272 N.W.2d 162, 164 (1978) ("It is undisputed that an inmate is not entitled to the minimum wage if employed by the prison."); *McGinnis v.*

*Stevens*, 543 P.2d 1221, 1238 (Alaska 1975). *Cf. Alvarado Guevara v. Immigration and Naturalization Service*, 902 F.2d 394 (5th Cir.1990) (aliens detained by INS not covered by FLSA).

We agree with the district court's characterization of the appellants as "prisoners" for wage purposes. Notwithstanding various references to SDPs as "patients" in state regulations, *see, e.g.,* 104 CMR § 8.02(7), it is clear to us that Massachusetts considers SDPs to be "prisoners" when it comes to determining their wages for prison work. Massachusetts has, by statute and administrative regulation, established a compensation system that pays inmates less than the minimum wage for work they do for the Prison Industries Program or in the servicing and maintenance of the correctional institutions in which they are held. M.G.L. c. 127, § 48A. *See also* 103 CMR § 405.07 (implementing sub-minimum wage scale).

M.G.L. c. 123A, § 5 says that SDPs "shall be subject to all laws, rules, and regulations which govern inmates of the institution to which they have been committed insofar as may be compatible with the treatment provided for by this chapter...." Because Section 2 authorizes the construction of the Treatment Center "at a correctional institution," and because the Treatment Center is in fact located at MCI–Bridgewater, we read Section 5 to mean that SDPs are subject to all the laws, rules and regulations which govern the lives of inmates of a correctional institution such as MCI–Bridgewater. This means, in turn, that SDPs are subject to M.G.L. c. 127, § 48A and the regulations promulgated thereunder.[1]

There is nothing arbitrary, unreasonable or inimical to the FLSA in this classification of SDPs as "prisoners." The brute fact is that the appellants would not be at the Treatment Center had they not committed, and been convicted of, serious crimes. *See Pearson v. Fair*, 935 F.2d 401, 412 (1st

Cir.1991) (commitment to Treatment Center must be preceded by criminal conviction, "most often for a violent or aggressive sexual act"). Their placement at the Treatment Center was intended, at least in part, to protect society. *Langton v. Johnston*, 928 F.2d 1206, 1216 (1st Cir.1991). This alone justifies treating inmates as "prisoners" for most purposes, including the payment of wages, and distinguishes them from the mental patients and mentally retarded people accorded FLSA coverage in *Souder v. Brennan* and *Weidenfeller v. Kidulis.*

Nor is it necessary to pay the appellants a minimum wage in order to preserve the statutory purposes of the FLSA. First, the minimum wage is not needed to protect the appellants' well-being and standard of living. *See* 29 U.S.C. § 202(a) (congressional finding and declaration of policy). SDPs, like the more common run of prisoners, are cared for (and their standard of living is determined, within constitutional limits) by the state. Second, the payment of sub-minimum wages to SDPs presents no threat of unfair competition to other employers, who must pay the minimum wage to their employees, because the Treatment Center does not operate in the marketplace and has no business competitors. *See Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1332 (9th Cir.1991) (Nelson, J., dissenting) (citing H.R.Rep. No. 2182, 75th Cong., 3d Sess. 6–7 (1938)). In sum, the decision to treat SDPs as "prisoners" in this context was logical, fair, and legally correct.

*Right to Treatment*

The appellants argue that they are entitled to the minimum wage even if the FLSA does not apply to them because (1) they have a "right to treatment" derived from the Federal Constitution, state law, and the terms of the consent decree issued in a case called *Williams v. Lesiak* [822 F.2d 1223 (1st Cir.1987)], *see generally*

---

1. Section 48A itself provides further evidence of the Massachusetts legislature's intention to include SDPs within the "prisoner" wage structure by referring specifically to SDPs in a clause which says that prison wardens may spend one-half the money an inmate earns for articles for the use of the inmate, but may spend all the money earned for that purpose if the inmate is a sexually dangerous person.

*Langton v. Johnston,* 928 F.2d at 1210–11, 1227 (describing litigation leading to consent decree and reproducing, as appendix to opinion, portions of decree), and (2) meaningful "treatment" implies the opportunity to work for the minimum wage.

State regulations promulgated pursuant to the *Williams v. Lesiak* consent decree do support the view that SDPs are entitled to work as part of their "treatment." The consent decree obliges the Commonwealth to "[i]mplement a meaningful work program...." The regulation which Massachusetts issued to fulfill that obligation, 104 CMR § 8.06(1), says: "Every patient shall be permitted, at his discretion, to perform work on the grounds of the Treatment Center."

But, the appellants *are* working. The present complaint turns on their further argument that effective treatment requires work at or above the minimum wage. We see nothing to support this argument in either the Federal Constitution, the *Williams v. Lesiak* consent decree, or state law.

■ First, we can find no case law to support the proposition that the Federal Constitution requires a state to pay the minimum wage to SDPs incarcerated at a facility like the Treatment Center. The cases appellants cite are inapposite. The two decisions in *Wyatt v. Stickney,* 344 F.Supp. 373, 381 and 344 F.Supp. 387, 402 (M.D.Ala.1972), concerned, respectively, treatment of patients at mental hospitals and treatment of students at a school for the mentally retarded. *Davis v. Balson,* 461 F.Supp. 842 (N.D.Ohio 1978), involved people who had been criminally committed after being found mentally ill, mentally retarded, or insane. To the extent that those cases described a constitutional right to the minimum wage as a component of treatment, the right extended only to mentally ill or mentally retarded people. SDPs are not, by and large, mentally ill. *Langton v. Johnston,* 928 F.2d at 1216. The distinction is important because it means that SDPs, notwithstanding their right to some treatment, remain "prisoners" in a fundamental sense. The boundaries of their

"right to treatment" as "sexually dangerous" prisoners are delineated by the terms of the *Williams v. Lesiak* consent decree—which established treatment standards "at a level beyond that required by any applicable constitutional minima," *Langton v. Johnston,* 928 F.2d at 1217—and by the state regulations promulgated to give practical effect to that decree.

■ It is, moreover, clear that neither the consent decree nor state law makes the minimum wage a necessary component of treatment. The *Williams v. Lesiak* consent decree, as noted above, requires only the establishment of a "meaningful" work program. While high wages might impart greater "meaning" to a work program, lower wages do not necessarily deprive such a program of all rehabilitative or therapeutic significance.

■ Finally, state law does not create an entitlement to the minimum wage, as the appellants claim; rather, it quite plainly expresses the Commonwealth's intention *not* to pay SDPs the minimum wage. It is true that 104 CMR § 8.06(1) says that "when possible, remunerative work shall be made [available] to interested patients." But, in light of M.G.L. c. 123A, §§ 2, 5, M.G.L. c. 127, § 48A, and 103 CMR § 405.-07, which together express Massachusetts' intention (1) to treat SDPs as "prisoners" for purposes of wages and (2) to pay prisoners sub-minimum wages, we read "remunerative" to mean "in return for some pay," not for any specific quantum of pay, and certainly not for the minimum wage.

*Other Claims*

We need not linger over the appellants' remaining claims. The argument that the Commonwealth must provide SDPs with an opportunity to work outside the grounds of the Treatment Center is refuted by the very regulations on which the appellants rely. 104 CMR § 8.06(2) contemplates the *possibility* of outside work, but 104 CMR § 8.06(1) *requires* the Commonwealth to make work available only on the Treatment Center grounds.

The Thirteenth Amendment claim raised by the appellants in their amended complaint—that the defendants had forced them to accept menial work in order to meet their "basic financial needs"—was also without merit. As the district court noted, the appellants have admitted that the work programs are voluntary and that they are free to accept or reject work assignments. *See* 104 CMR § 8.06(1).[2] Finally, we see no error in the district court's decision to render judgment without first conducting an evidentiary hearing.

*Affirmed.*

2. In support of their motion for summary judgment, and in opposition to the defendants' motion for judgment on the pleadings, the appellants shifted ground and introduced affidavits from two SDPs (both plaintiffs in the case at hand) testifying that a correction officer at the Treatment Center had violated the Thirteenth Amendment by forcing them to paint their rooms without compensation. On appeal, the appellants have forsaken their "basic financial needs" theory and rely on the argument raised by these affidavits, attacking the district court's failure even to account for it in its decision.

But the evidence contained in the two affidavits had nothing to do with the case before the district court, a case to which the correction officer charged in the affidavits was not even a party. Had the appellants attempted to introduce such testimony at a trial of that case, the district court would have acted properly in excluding it as irrelevant. The district court was equally within bounds here in ignoring the affidavits, and the issue they raised, when granting the defendants' motion for judgment on the pleadings and denying the appellants' motion for summary judgment.