STATE of Wisconsin EX REL. Hung Nam TRAN and
Eric L. Fankhauser, Petitioners-Appellants,†

v.

Thomas SPEECH, Respondent-Respondent.

Court of Appeals

*No. 2009AP884. Submitted on briefs November 13, 2009.
—Decided March 31, 2010.*

2010 WI App 58

(Also reported in 782 N.W.2d 106.)

† Petition for Review denied w/o costs on 7/21/10.

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Hung Nam Tran* and *Eric L. Fankhauser*, pro se.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Richard Briles Moriarty*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Anderson, J.

¶ 1. ANDERSON, J. WISCONSIN STAT. ch. 980 (2007–08)[1] patients Hung Nam Tran and Eric L. Fankhauser, acting pro se, appeal a final order of the circuit court quashing their writ of certiorari[2] and dismissing their petition for a writ of certiorari. They

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[2] The petition for a writ of certiorari is analogous to a complaint. The standard for deciding whether the petition is sufficient to order a return is the same standard used for

claim that the circuit court erred when it ruled that Warden Thomas Speech[3] of the Wisconsin Resource Center did not violate policy, procedure or law by reducing patient wage rates to below minimum wage. We do not agree and therefore affirm the order of the circuit court.

¶ 2. *Procedural history and relevant facts:* In a memorandum dated January 31, 2007, Warden Speech directed the reduction in wage rates to below the minimum wage for Wisconsin Resource Center patients civilly committed pursuant to WIS. STAT. ch. 980. This reduction was reflected in the "Patient Work Program Handbook."

¶ 3. Thereafter, on October 26, 2007, Tran and Fankhauser sought a writ of certiorari, petitioning the circuit court "for review of the procedure and substance regarding the compensated wages for therapeutic labor performed by patients." In addition, they requested that the court "reverse the order [reducing their wages to below minimum wage] instituted by [Warden] Thomas Speech."

¶ 4. Tran and Fankhauser pointed to a Wisconsin Resource Center Policies and Procedures document from 2005, which they claim proves that Warden Speech violated Wisconsin Resource Center policy to compensate patients with a wage consistent with current federal minimum wage. This document stated in pertinent part:

> It is the policy of the Wisconsin Resource Center that patients are afforded an opportunity to work while residing at the institution and be compensated consis-

deciding whether a complaint states a claim. *See, e.g., State ex rel. Hansen v. Circuit Court for Dane County*, 181 Wis. 2d 993, 997–98, 513 N.W.2d 139 (Ct. App. 1994).

[3] Thomas Speech was the acting warden of the Wisconsin Resource Center.

tent with current Federal Minimum Wage. This program and components are administered under the guidelines set forth in the WRC Patient Work Program Handbook.

¶ 5.   Subsequently, in a November 9, 2007 writ of certiorari, Warden Speech was ordered by the circuit court to file a return[4] within sixty days. On December 3, 2007, the return was filed.[5]

¶ 6.   The   return   confirmed   that   Tran   and Fankhauser were committed as sexually violent persons under WIS. STAT. ch. 980.[6] It contained the January 31, 2007 memorandum from Warden Speech to "Chapter 980 patients" informing them of "important changes that are being made in the WRC Work Program" effective "March 4, 2007."

---

[4] A "return" is a court officer's (i.e., Warden Speech's) "bringing back of an instrument to the court that issued it:   RETURN OF WRIT." *See* BLACK'S LAW DICTIONARY 1343 (8th ed. 2004).

[5] Tran and Fankhauser then moved to compel the filing of an amended return and, after briefing and a hearing, the court denied that motion.

[6] Tran and Fankhauser are patients civilly committed pursuant to WIS. STAT. ch. 980. Each is committed as a "sexually violent person," which is defined as:

> [A] person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence.

*See* WIS. STAT. § 980.01(7).

The   Wisconsin   Resource   Center,   where   Tran   and Fankhauser are confined, is a WIS. STAT. ch. 980 facility of the State of Wisconsin operated by Wisconsin Department of Health and Family Services. *See, e.g., Thielman v. Leean*, 140 F. Supp. 2d 982, 987–88 (W.D. Wis. 2001), *aff'd*, 282 F.3d 478 (7th Cir. 2002).

¶ 7. The return also contained:

A Patient Work Program Handbook dated March 4, 2007, that provided details regarding the changes referenced in the January 31, 2007 memorandum.

Certain department policies and procedures relevant to Patient Management Procedures and Employment-Patient at the Wisconsin Resource Center.

Patient Handbook and Unit Rules for the Wisconsin Resource Center.

Awareness reports for petitioners (Tran and Fankhauser).

¶ 8. On March 23, 2009, after briefing was completed, a hearing was held on the merits. However, a copy of the March 23 hearing transcript is not in the appellate record.[7] On April 21, 2009, the circuit court's final order was filed, quashing Tran and Fankhauser's writ of certiorari and dismissing their petition for a writ of certiorari.

¶ 9. Tran and Fankhauser filed a notice of appeal on April 1, 2009.[8] On appeal, they argue that they "are

---

[7] To any extent that it is relevant to our analysis, we assume that the missing transcript of the March 23, 2009 hearing on the merits supports the circuit court's ruling. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26–27, 496 N.W.2d 226 (Ct. App. 1993) (On appeal, we are "bound by the record as it comes" to us and "when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the circuit court's ruling.").

[8] As noted, the circuit court's final order dismissing the petition and quashing the writ was entered on April 21, 2009, *after* the April 1, 2009 filing of the notice of appeal. However, this does not affect our appellate jurisdiction because Wis. Stat. § 808.04(8) clarifies that the April 1, 2009 notice of appeal is "treated as filed after that entry and on the day of the entry" of the April 21, 2009 final order. *See id.*

patients under the Mental Health Act and the minimum wage provision under sec. 51.61(1)(b) WIS. STATS. is applicable to them." They also assert that the "trial court erred when [it] ruled that Speech did not violate[] WRC policies and procedures, the Wisconsin Administrative Code, the Wisconsin Statute § 51.61.(1)(b) and substantive due process of law when Speech failed to compensate appellants the required minimum wages for their therapeutic labor."

¶ 10. *Law and discussion:* Whether Tran and Fankhauser—Wisconsin Resource Center patients civilly committed pursuant to WIS. STAT. ch. 980—are employees under federal or Wisconsin minimum wage law is a question of law we decide de novo. *See State v. Johnson,* 2007 WI 107, ¶ 27, 304 Wis. 2d 318, 735 N.W.2d 505.

¶ 11. In *Sanders v. Hayden,* 544 F.3d 812 (7th Cir. 2008), the Seventh Circuit reviewed this very issue. Sanders, like Tran and Fankhauser, was "civilly committed to a secure treatment facility—the Wisconsin Resource Center—as a sexually violent person" under WIS. STAT. ch. 980. *Sanders,* 544 F.3d at 813–14. Sanders sued "state officials, claiming that they violated his federal rights by reducing his pay for the work he performs at the Center." *Id.* In construing Sander's pro se complaint as one made under the Fair Labor Standards Act (FLSA), the Seventh Circuit confirmed, through numerous case law citations,[9] that it was well established that "[p]rison and jail inmates are not covered by the FLSA." *Sanders,* 544 F.3d at 814.

[9] *Bennett v. Frank,* 395 F.3d 409, 409 (7th Cir. 2005); *Vanskike v. Peters,* 974 F.2d 806, 810–12 (7th Cir. 1992); *Loving v. Johnson,* 455 F.3d 562, 563 (5th Cir. 2006) (per curiam); *Tourscher v. McCullough,* 184 F.3d 236, 244 (3d Cir. 1999); *Villarreal v. Woodham,* 113 F.3d 202, 206–07 (11th Cir. 1997);

¶ 12. Among the cases it relied on was *Bennett v. Frank*, 395 F.3d 409 (7th Cir. 2005). In *Bennett*, the Seventh Circuit noted that the FLSA defines "employee" as "any individual employed by an employer" and defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." *Bennett*, 395 F.3d at 409; *see also* 29 U.S.C. §§ 203(e)(1), (d) (2006). The court in *Bennett* further noted that "there are some excepted classes of employees, § 203(e)(2), (3), (4), but prisoners are not among them." *Bennett*, 395 F.3d at 409.

¶ 13. Nevertheless, the Seventh Circuit's examination of the FLSA and relevant case law led to its conclusion that the statute does not apply to prisoners or civilly committed patients. Its cogent discussion is worth repeating. First, it quoted the following passage from its holding in *Bennett*:

> [P]eople are not imprisoned for the purpose of enabling them to earn a living. The prison pays for their keep. If it puts them to work, it is to offset some of the cost of keeping them, or to keep them out of mischief, or to ease their transition to the world outside, or to equip them with skills and habits that will make them less likely to return to crime outside. None of these goals is compatible with federal regulation of their wages and hours. The reason the FLSA contains no express exception for prisoners is probably that the idea was *too outlandish* to occur to anyone when the legislation was under consideration by Congress. [*Bennett v. Frank*], 395 F.3d [409,] 410 (7th Cir. 2005].

*Sanders*, 544 F.3d at 814 (emphasis added).

*Gambetta v. Prison Rehabilitative Indus. and Diversified Enters., Inc.*, 112 F.3d 1119, 1124 (11th Cir. 1997); *Danneskjold v. Hausrath*, 82 F.3d 37, 42–43 (2d Cir. 1996); *McMaster v. Minnesota*, 30 F.3d 976, 980 (8th Cir. 1994); *Henthorn v. Department of Navy*, 29 F.3d 682, 686–87 (D.C. Cir. 1994); *Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993).

¶ 14. Then, referring to its *Bennett* analysis regarding prisoners, the Seventh Circuit explained why its conclusion translates to civilly committed patients:

> If the words "confined civilly as a sexually violent person" are substituted for "imprisoned" in the first sentence and "secure treatment facility" for "prison" in the second sentence, the quoted passage applies equally to the present case, as held in *Hendrickson v. Nelson*, No. 05–C-1305, 2006 WL 2334838 (E.D. Wis. Aug. 10, 2006). And years earlier the First Circuit had held that persons civilly committed because they were sexually violent were not covered by the FLSA, noting that "the minimum wage is not needed to protect the appellants' well-being and standard of living . . . . SDPs [sexually dangerous persons], like the more common run of prisoners, are cared for (and their standard of living is determined, within constitutional limits) by the state . . . . [And] the payment of sub-minimum wages to SDPs presents no threat of unfair competition to other employers, who must pay the minimum wage to their employees, because the Treatment Center does not operate in the marketplace and has no business competitors." *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992) (per curiam).

*Sanders*, 544 F.3d at 814.

■■

¶ 15. We agree with the Seventh Circuit: persons civilly committed because they were sexually violent are not covered by the FLSA. Tran and Fankhauser do not need the minimum wage to protect their well being and standard of living. *See Sanders*, 544 F.3d at 814. They are cared for (and their standard of living is determined, within constitutional limits) by the state. *See id.*

¶ 16. This interpretation of the federal law matches our understanding of Wisconsin law. Just as

persons civilly committed because they were sexually violent are not intended to be and are not employees under the federal law, they are not intended to be and are not employees under WIS. STAT. ch. 104, Wisconsin's minimum wage law.

¶ 17. Wisconsin's legislative history provides further support that WIS. STAT. ch. 980 patients are not employees under our current Wisconsin minimum wage law. Examination of WIS. STAT. § 51.61, the patients rights provision of the WIS. STAT. ch. 51 Mental Health Act, reveals an ongoing legislative intent and understanding that patients covered by this provision—which has included ch. 980 patients since 1994[10]—have never been employees under WIS. STAT. ch. 104. Previously, when the legislature intended to grant ch. 980 patients minimum wage privileges, it chose language to reflect this intent; more recently, when it decided to no longer grant this privilege, it *changed the language* of the statute to reflect this *changed* intention. When § 51.61 was created in 1975,[11] it granted a patient covered by its provisions the benefits of minimum wage compensation for labor. *See* § 51.61(1)(b) (1975). Except as otherwise provided, a patient was to "[r]eceive wages or an allowance for work performed which is of financial benefit to the facility in accordance with the regulations established for compliance with the minimum wage and hour laws by the U.S. department of labor." *Id.*

---

[10] WISCONSIN STAT. ch. 980, which became effective June 2, 1994, was created by 1993 Wis. Act 479, § 40. Chapter 980 committed persons are defined as "patients" under WIS. STAT. ch. 51, the Mental Health Act. *State v. Post*, 197 Wis. 2d 279, 313, 541 N.W.2d 115 (1995).

[11] WISCONSIN STAT. § 51.61 was created by 1975 Wis. Laws, ch. 430, § 60. *See Caldwell v. Percy*, 105 Wis. 2d 354, 375, 314 N.W.2d 135 (Ct. App. 1981); *see also State ex rel. Jones v. Gerhardstein*, 135 Wis. 2d 161, 177 n.5, 400 N.W.2d 1 (Ct. App. 1986).

¶ 18. Through 1980, the substance of WIS. STAT. § 51.61(1)(b) remained mostly unchanged; the 1979–80 version of § 51.61(1)(b) stated in relevant part:

> Patients may voluntarily engage in therapeutic labor which is of financial benefit to the facility if such labor is compensated in accordance with federal minimum wage and hour laws and regulations of the U.S. department of labor, for that type of labor whether or not such laws or rules are specifically applicable to the facility . . . .

*See id.* From this language, it is plain that *before* the 1981 amendment to § 51.61, the Wisconsin legislature intended that patients, voluntarily engaging in therapeutic labor which is of financial benefit to the facility, would be entitled to minimum wages, whether federal laws and regulations granted patients that same right or not. *See id.* (1975 through 1979–80 versions).[12]

¶ 19. However, marking a shift in legislative intent, a 1981 budget bill amended the statutory language

---

[12] However, we note that during the years that patients were granted minimum wage compensation under WIS. STAT. § 51.61(1)(b), § 51.61(1)(b) did not make any reference to Wisconsin's minimum wage laws. *See* § 51.61(1)(b) (1975 through 1979–80 versions). This silence is significant because had the legislature, when it crafted § 51.61(1)(b), thought that patients under WIS. STAT. ch. 51 were already entitled to minimum wage compensation under WIS. STAT. ch. 104, granting this same entitlement under the newly enacted § 51.61 would have been superfluous. When interpreting a statute, we must attempt to give effect to every word of a statute, so as not to render any portion of the statute superfluous. *See Landis v. Physicians Ins. Co. of Wis., Inc.*, 2001 WI 86, ¶ 16, 245 Wis. 2d 1, 628 N.W.2d 893. This rule of statutory interpretation is unquestionably based on the assumption that the legislature, when constructing statutes, crafts the law to be meaningful and not superfluous.

created in 1975: no longer did the language require minimum wage compensation for WIS. STAT. ch. 980 patients. The revised language has remained unchanged since 1981 and, thus, is found in the current version of WIS. STAT. § 51.61. That language states:

> Patients may voluntarily engage in therapeutic labor which is of financial benefit to the facility if such labor is *compensated in accordance with a plan approved by the department* . . . .

*See* § 51.61(1)(b) (1981–82) and § 51.61(1)(b) (2007–08) (emphasis added).

¶ 20. Tran and Fankhauser nonetheless claim that WIS. STAT. § 51.61(1)(b) supports their position. We cannot fathom why. Instead, for all the reasons just discussed, we agree with Warden Speech that the history of the statute's original language and its amended and current language discloses conscious legislative intent to initially require that patients covered by § 51.61 be paid at minimum wage levels—reflecting an assumption that WIS. STAT. ch. 104 did not apply to labor by those patients—and later to eliminate any directive that a patient covered by § 51.61 be paid at minimum wage levels.

¶ 21. Tran and Fankhauser's next argument is that Warden Speech violated WIS. ADMIN. CODE § DHS 94.15(3) (Nov. 2008)[13] through the reduction of wage rates for WIS. STAT. ch. 980 patients. Section DHS 94.15(3) states, "Payment for therapeutic labor autho-

---

In short, the legislature's creation of WIS. STAT. § 51.61 in 1975, which granted minimum wage compensation to patients, serves as confirmation that the legislature did not view WIS. STAT. ch. 104 as extending to patients governed by § 51.61 (1975).

[13] All references to the Wisconsin Administrative Code are to November 2008 version unless otherwise noted.

rized under s. 51.61(1)(b), Stats., shall be made in accordance with wage guidelines established under state and federal law." As demonstrated above, ch. 980 patients are not entitled to minimum wages under either state or federal law. Thus, paying ch. 980 patients "in accordance with wage guidelines established under state and federal law" seems to be an attempt to identify the current language of WIS. STAT. § 51.61 as the only applicable "wage guideline[]." Under this interpretation of § DHS 94.15(3), even though Warden Speech's January 31, 2007 memorandum calls for compensation below minimum wage levels, it is nonetheless "in accordance with wage guidelines established under state and federal law," *see id.*, because the federal wage guidelines do not apply and, thus, the only applicable state guideline provides that wages are determined "in accordance with a plan approved by the department," *see* § 51.61(1)(b).[14]

¶ 22. Tran and Fankhauser also argue that the circuit court erred when it ruled that Warden Speech did not violate Wisconsin Resource Center policy and procedure. Tran and Fankhauser point to nothing that demonstrates that Warden Speech could not act in his capacity as warden to change policy and procedure. They do point to *Irby v. Macht*, 184 Wis. 2d 831, 522 N.W.2d 9 (1994), *overruled in part by Sandin v. Conner*, 515 U.S. 472 (1995), for the proposition that "[i]t is well

---

[14] In the alternative, if WIS. ADMIN. CODE § DHS 94.15(3) is construed as having attempted to create rights for patients governed by WIS. STAT. § 51.61 to be paid minimum wage rates, it would be contrary to the intent of the legislature as expressed in the 1981 amendments to § 51.61. Applying this alternative reading, § DHS 94.15(3) would be out of harmony with § 51.61 and, therefore, a mere nullity. *See Seider v. O'Connell*, 2000 WI 76, ¶ 26, 236 Wis. 2d 211, 612 N.W.2d 659.

recognized in every jurisprudence that state officials must follow the rule which itself has promulgated." Warden Speech did exactly this. Thus, we fail to see how this proposition furthers their argument. Warden Speech followed the internal policy of the Wisconsin Resource Center and his memorandum, in fact, shows that he intended to do so until the time his change in policy was to be implemented, at which time he would follow the new policy. We have been given no information or shown any reason why Warden Speech is not allowed to implement a change—which we have decided violates no state or federal law—to an internal policy or procedure.

¶ 23. Finally, Tran and Fankhauser make a substantive due process claim arguing that the "[t]rial court has no power to exceed the authority vested in the legislature" and that its "refusal to order Speech to pay appellants the required minimum wage for their therapeutic labor as directed by Speech's own agency under [Wis. Admin. Code] § [DHS] 94.15(3) and adherence to [Wis. Stat.] § 51.61(1)(b) [] deprived [them] of their[] substantive due process rights."

¶ 24. The right to substantive due process addresses "the content of what government may do to people under the guise of the law." *Reginald D. v. State*, 193 Wis. 2d 299, 307, 533 N.W.2d 181 (1995). It protects against governmental action that either "shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty." *State v. Jorgensen*, 2003 WI 105, ¶ 33, 264 Wis. 2d 157, 667 N.W.2d 318 (citation omitted); *see also State v. Laxton*, 2002 WI 82, ¶ 10 n.8, 254 Wis. 2d 185, 647 N.W.2d 784. The right to substantive due process protects against a state act that is arbitrary, wrong or oppressive, regardless of whether

the procedures applied to implement the action were fair. *See Monroe County Dep't of Human Servs. v. Kelli B.*, 2004 WI 48, ¶ 19, 271 Wis. 2d 51, 678 N.W.2d 831.

■■

¶ 25. The threshold inquiry when analyzing an alleged violation of substantive due process is whether the challenger has established a deprivation of a liberty or property interest protected by the constitution. *Dowhower ex rel. Rosenberg v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 14, 236 Wis. 2d 113, 613 N.W.2d 557. Tran and Fankhauser have not. As a result, they have not met the predicate threshold for bringing a substantive due process claim. They have not shown why or how the federal or state law (*i.e.*, the FLSA, WIS. STAT. § 51.61 or WIS. ADMIN. CODE § DHS 94.15(3)) deprives them of a constitutionally protected right. Nor have they shown a violation of substantive due process due to circuit court error. Tran and Fankhauser fail to develop or prove any viable substantive due process claim and we decline to spend any more time on this argument. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

*By the Court.*—Order affirmed.