# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-2626

_____

David Leroy Gamble; Cyrus Patrick Gladden, II, and all others similarly situated; David James Jannetta, and all others similarly situated; Jerrad William Wailand, and all others similarly situated; Clarence Antonia Washington

*Plaintiffs - Appellants*

v.

Minnesota State-Operated Services; Minnesota State Industries; Minnesota Sex Offender Program; Department of Human Services; State of Minnesota

*Defendants - Appellees*

Emily Johnson Piper; Shelby Richardson; John and Jane Does, 1-20 as unknown individuals; Lucinda Jesson; Dennis Benson; Nancy Johnston; Shirley Jacobson; Charlie Hoffman; Pamela Wheelock, official capacity

*Defendant*s

Jodi Harpstead, Acting Minnesota Department of Human Services Commissioner, in her official capacity

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 15, 2022
Filed: April 26, 2022

_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

The plaintiffs, civil detainees in the Minnesota Sex Offender Program ("MSOP"), sued the state defendants arguing that they failed to pay the plaintiffs minimum wage under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. The district court[1] granted summary judgment to the defendants, and the plaintiffs appeal. We affirm.

**I.**

The plaintiffs are sexually dangerous civil detainees in the MSOP who participate in the voluntary Vocational Work Program ("VWP"). *See generally* Minn. Stat. §§ 253D.07, subd. 3 (requiring civil commitment when a person has a "sexual psychopathic personality" or is "a sexually dangerous person"); 253D.02, subds. 15-16 (defining "sexual psychopathic personality" and "sexually dangerous person" to involve sexually dangerous behavior). The MSOP is operated by the Minnesota Department of Human Services ("DHS"), a defendant, as part of its Direct Care and Treatment Division.[2] "The vocational work program is an extension of therapeutic treatment in order for civilly committed sex offenders to learn valuable work skills and work habits while contributing to their cost of care." Minn. Stat. § 246B.05, subd. 1.

_____

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

[2]The Direct Care and Treatment Division was formerly known as Minnesota State-Operated Services ("MSOS"), a defendant in this case.

Detainees are placed in jobs primarily based on their therapeutic needs. A detainee cannot be fired from the VWP but can be removed for a maximum of ninety days and given another placement if he is vocationally ready.

The detainees perform tasks such as cooking, cleaning, groundskeeping, gardening, snow removal, and facilities maintenance. They also do "industrial and commercial activities" such as woodworking, printing, sign manufacturing, and craftwork for Minnesota State Industries ("MSI"), which is operated by the MSOP as part of the VWP. *See* Minn. Stat. § 246B.06, subd. 1. MSI's activities "must be for the primary purpose of sustaining and ensuring Minnesota State Industries' self-sufficiency, providing educational training, meaningful employment, and the teaching of proper work habits to the patients of the Minnesota sex offender program under this chapter, and not solely as competitive business ventures." Minn. Stat. § 246B.06, subd. 1(a). MSI does not provide goods or services to private entities and does not engage in interstate commerce.

Detainees in the VWP are paid $10.00 per hour, but the state can and does withhold up to fifty percent of a detainee's wages to "reduc[e] state costs associated with operating the Minnesota Sex Offender Program." *See* Minn. Stat. § 246B.06, subd. 6. To incentivize participation in treatment, a detainee can work more hours and keep a greater percentage of his wages as he increases his participation in treatment.

In addition, the state can recover from detainees their cost of care. Minn. Stat. §§ 246B.07, subd. 1; 246B.08. Unlike withheld wages, which are retained by the MSOP, cost-of-care payments are deposited into Minnesota's general fund. Between August 2013 and October 2020, MSOP received only $12,308.93 in cost-of-care payments from seven MSOP clients. No current detainee pays toward his cost of care besides wage deductions, but some of the plaintiffs receive cost-of-care statements.

The VWP operates at a net loss—in 2020, MSI, the only revenue-making part of the VWP, had sales of $1.38 million with costs of $2.77 million. If the VWP made money, its net profits must be "used for the benefit of the civilly committed sex offenders." Minn. Stat. § 246B.06, subd. 1(b).

Minnesota must provide medical and dental care to the detainees. Minn. Admin. R. 4665.3300, 4665.3800. Detainees must have medical insurance, but the MSOP "pays . . . any medical insurance premiums and any enrollee cost-sharing obligations related to state funded insurance programs (such as copayments and deductibles) for necessary medical services." Minnesota is also required to provide a bed, linens, clothing, laundry services, and three meals per day to detainees, Minn. Admin. R. 4665.1900, 4665.2000, 4665.5500, 4665.2800, though the plaintiffs often purchase higher quality or additional items. The detainees can purchase from the state items such as over-the-counter medicines; hygiene, dental, and hair-care items; clothes; electronics; and food.

The plaintiffs sued MSOS, MSI, MSOP, DHS, the state of Minnesota, and various state officials in their official capacity, under the Fair Labor Standards Act ("FLSA"), alleging that the plaintiffs are employees and must be paid minimum wage. See 29 U.S.C. § 206. The plaintiffs also brought constitutional claims, which the district court dismissed. The plaintiffs moved for conditional class certification, and the district court granted the motion. Then both the plaintiffs and the defendants moved for summary judgment. The defendants argued that the plaintiffs are not employees under the FLSA and that, alternatively, the defendants are entitled to absolute immunity under the Portal-to-Portal Act § 10, 29 U.S.C. § 259. The defendants also moved to exclude the testimony of plaintiffs' expert. The district court granted the defendants' summary-judgment motion, concluding that the plaintiffs are not employees under the FLSA and that, alternatively, the defendants are immune under the Portal-to-Portal Act. The district court denied the defendants' motion to exclude expert testimony as moot.

## II.

We review the district court's grant of summary judgment *de novo. Whittington v. Tyson Foods, Inc.*, 21 F.4th 997, 1000 (8th Cir. 2021). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

The FLSA requires an employer to pay its employees a minimum wage of at least $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Though the plaintiffs are paid $10.00 per hour, the MSOP withholds up to fifty percent of some detainees' wages, and the defendants do not argue that for purposes of the FLSA the plaintiffs are paid minimum wage. An "[e]mployer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency," § 203(d), and an "employee" is "any individual employed by an employer," § 203(e)(1). "Employ" means "to suffer or permit to work." § 203(g). Given these "exceedingly broad" definitions, the Supreme Court has stated that "[t]he test of employment under the Act is one of economic reality." *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295, 301 (1985) (internal quotation marks omitted); *see also Karlson v. Action Process Serv. & Priv. Investigations, LLC*, 860 F.3d 1089, 1092 (8th Cir. 2017).

In *McMaster v. Minnesota*, we held that the "economic reality of the relationship between [prison] inmates and the [Department of Corrections] dictates that the inmates not be considered employees." 30 F.3d 976, 980 (8th Cir. 1994). Instead, we concluded, the relationship between the inmates and the state was "a custodial relationship in which the FLSA does not apply." *Id.* In reaching this conclusion, we noted that the prisoners had not "engaged in a bargained-for exchange of labor for consideration" and that the state provided for their basic needs, making the FLSA's primary purpose of "providing minimum standards of living for workers" inapplicable. *Id.*; *see also Matherly v. Andrews*, 859 F.3d 264, 278 (4th

-5-

Cir. 2017) (holding that prisoners were not state employees in part because they did not engage in a "bargained-for exchange of labor for mutual economic gain").

Applying these factors here, we join all other circuits that have decided the question in concluding that sexually dangerous civil detainees are not state employees. *See Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008); *Matherly*, 859 F.3d at 278; *Miller v. Dukakis*, 961 F.2d 7, 8-9 (1st Cir. 1992) (per curiam).

First, "there is no bargained-for exchange of labor for mutual economic gain" like that which "occurs in a true employer-employee relationship." *Matherly*, 859 F.3d at 278 (internal quotation marks omitted); *see also McMaster*, 30 F.3d at 980. Detainees "are under the control and supervision of the detention facility, which is simply not comparable to the free labor situation of true employment. Those in custodial detention, unlike workers in a free labor market, certainly are not free to walk off the job site and look for other work." *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372 (4th Cir. 2021) (internal quotation marks and citation omitted) (holding that civil immigration detainees are not employees under the FLSA).

The purpose of the VWP is not to enable detainees to earn a living but to provide "assessment, diagnosis, care, treatment, supervision, or other services" for the detainees. *See* Minn. Stat. § 246B.01, subd. 1a; *Sanders*, 544 F.3d at 814. The VWP is "an extension of therapeutic treatment in order for civilly committed sex offenders to learn valuable work skills and work habits while contributing to their cost of care." Minn. Stat. § 246B.05, subd. 1. Vocational programming is administered to incentivize participation in treatment, and detainees cannot be permanently fired from the VWP. The detainees' participation in the VWP is not for their economic gain but rather is part of their rehabilitation. *See Matherly*, 859 F.3d at 278; *McMaster*, 30 F.3d at 980.

Nor is the VWP for the state's economic gain because it generates no profit, and, regardless, any net profits must be used for the benefit of the detainees. *See* Minn. Stat. § 246B.06, subd. 1(b). The fact that detainees perform some essential

tasks that would otherwise be performed by nondetainees does not change the non-profit-seeking nature of the VWP. *See Ndambi*, 990 F.3d at 374. We conclude that there is no "bargained-for exchange of labor" because the detainees work at the state's discretion, *see id.* at 372, and no "mutual economic gain" because the purpose of the VWP is rehabilitation and treatment and the state does not benefit financially from the VWP, *see Matherly*, 859 F.3d at 278.

Second, like prisoners, the detainees have their basic needs met by the state, which means that the FLSA's purpose to maintain a "standard of living necessary for health, efficiency, and general well-being of workers" does not apply here. *See McMaster*, 30 F.3d at 980; *Miller*, 961 F.2d at 9 ("[T]he minimum wage is not needed to protect the [detainees'] well-being and standard of living" because they "are cared for . . . by the state."); *Matherly*, 859 F.3d at 278 ("[T]he BOP provides him with all of his necessities, satisfying the underlying purpose of the FLSA's minimum wage provision."). Minnesota must provide to the detainees medical and dental care, a bed, linens, clothing, laundry services, and three meals per day. Minn. Admin. R. 4665.3300, 4665.3800, 4665.1900, 4665.2000, 4665.5500, 4665.2800.

The plaintiffs argue that their basic needs are not met by the state, but they fail to create a genuine dispute of material fact about the issue. The plaintiffs testified that they purchase many items for themselves, such as clothes to perform their jobs, and they are able to purchase from the state items such as over-the-counter medicines; hygiene, dental, and hair-care items; clothes; electronics; and food. But the plaintiffs provided no evidence that the state failed to provide clothing, a bed, food, medical care or dental care, and the fact that the plaintiffs choose to buy higher quality or additional items is not evidence that the state fails to provide for their basic needs. Though detainees must have medical insurance, and indigent detainees must apply for cash assistance, both medical insurance and cash assistance can be obtained from the state, *see* Minn. Stat. § 256D.01 (creating a cash-assistance program), and the state pays for insurance premiums and cost-sharing obligations.

The plaintiffs also argue that the state does not meet their basic needs because detainees are required to pay for their cost of care and wage deductions contribute to their cost of care. *See* Minn. Stat. §§ 246B.05, subd. 1; 246B.07-.08. We disagree. The plaintiffs did not present evidence that any of them pays his cost of care apart from wage deductions, the MSOP has recovered only $12,308.93 in cost-of-care payments between 2013 and 2020 from seven detainees, and no current detainee pays anything besides wage deductions. Besides, detainees are not required to participate in the VWP and thus are not required to contribute to their cost of care through work. And, in any event, the mere fact that the state can recover cost of care through either wage deductions or cost-of-care payments does not create an employment relationship because the state can recover cost of care from Minnesota prisoners too, Minn. Stat. § 243.23, subd. 2, and they are not employees, *see McMaster*, 30 F.3d at 980. We conclude that there is no genuine dispute of material fact about whether the plaintiffs' basic needs are met by the state.

The plaintiffs make two other arguments about why they are employees, which we do not find convincing. First, the plaintiffs argue that the MSOP's use of low-cost labor creates unfair competition, which the FLSA aimed to minimize. *See* 29 U.S.C. § 202. In the prisoner context, unfair-competition concerns are minimized by the Ashurst-Sumners Act, 18 U.S.C. §§ 1761-1762, which generally "prevents the shipment of prisoner-made goods in interstate commerce, thus avoiding the problem of unfair competition based on cheap labor" but allows the shipment of goods "produced for use by federal or state governments." *McMaster*, 30 F.3d at 980. Nonetheless, prison labor might implicate unfair-competition concerns when prisoners are paid below minimum wage to work for "a company that was not providing services to the prison and that competed with companies required to pay wages set by the FLSA." *Danneskjold v. Hausrath*, 82 F.3d 37, 44 (2d Cir. 1996).

Here, we are not convinced that there are anticompetitive effects that preclude summary judgment for the defendants. True, there might be a factual dispute about whether MSI has anticompetitive effects to the extent that MSI provides goods to

-8-

government entities that might otherwise be provided by private companies.[3] *Cf. Miller*, 961 F.2d at 8-9 (concluding at the judgment-on-the-pleadings stage that there were no unfair-competition concerns because "the Treatment Center does not operate in the marketplace and has no business competitors"); *Sanders*, 544 F.3d at 814 (agreeing with *Miller* at the motion-to-dismiss stage). But this possible factual dispute is not material to whether the plaintiffs are employees because the FLSA's unfair-competition purpose is not implicated here for two reasons. First, MSI does not provide goods or services to private entities and must by law give preference "to the performance of work projects for state departments and agencies," Minn. Stat. § 246B.06, subd. 1(d). *Cf. McMaster*, 30 F.3d at 980 (noting that the Ashurst-Sumners Act protects competition by prohibiting the interstate shipment of prisoner-made goods but excepts goods "made for use by federal or state governments"); *Danneskjold*, 82 F.3d at 44 (noting that unfair-competition concerns may exist when a prisoner is paid below minimum wage to work for a private company that does not perform prison services). Second, before establishing a vocational activity, the commissioner of human services must "consult with stakeholders including representatives of business, industry, [and] organized labor" to ensure the activity is "consistent with . . . the best interests of the state, business, industry, and labor." Minn. Stat. § 246B.06, subd. 1(b).

Second, the plaintiffs argue that they are employees under Supreme Court precedent holding that workers for a nonprofit religious organization that operates commercial businesses are employees. *See Alamo*, 471 U.S. at 299-303. We disagree. In *Alamo*, there was no custodial relationship, *see id.*, and there was a bargained-for exchange of labor for mutual economic gain, *see id.* at 301; the

---

[3]The plaintiffs provided expert testimony about the anticompetitive effects of MSI. The expert stated that MSI produces signs for state entities that also hire private companies and that the price of signs produced by MSI was possibly cheaper by fifty to sixty percent. The defendants moved to exclude the expert's testimony, and the district court denied the motion as moot after it granted summary judgment to the defendants. Even if we consider the expert's testimony, we conclude that unfair-competition concerns do not make the plaintiffs employees under the FLSA.

workers were "fined heavily for poor job performance, worked on a commission basis, and were prohibited from obtaining food from the cafeteria if they were absent from work," *id.* at 301 n.22 (internal quotation marks omitted).  Thus, *Alamo* does not apply here.

In sum, we conclude that the district court's grant of summary judgment to the defendants was appropriate because the plaintiffs, sexually dangerous civil detainees, are not employees of the MSOP.[4]  We therefore need not reach the district court's alternative holding that the defendants are entitled to summary judgment under the Portal-to-Portal Act.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendants.

_____

---

[4]The plaintiffs also argue that Department of Labor regulations about the FLSA that treat "patient workers" as employees apply to them because the plaintiffs are analogous to patient workers.  *See* 29 C.F.R § 525.3, subd. (e), (g).  We disagree because the regulations apply only to workers with disabilities, 29 C.F.R. § 525.2, and the plaintiffs do not allege that they are disabled.  *See Miller*, 961 F.2d at 8-9 (rejecting the argument that sexually dangerous civil detainees should be regarded as "patients" rather than "prisoners" for the purposes of the FLSA).